THAYER, Circuit Judge.
This was a suit on a benefit certificate issued by the Travelers’ Protective Association of America, the defendant in error, to Edward McC. Taliaferro, on November 10, 1893. The certificate contained the following provision:
“Every member of the Travelers’ Protective Association in good standing shall be entitled to the following benefits, upon satisfactory proof being presented to the national board of directors. Four thousand dollars shall be paid to the heirs of any deceased member in case of death by accident. * * *”
The petition in the suit which was filed by Maud F. C. Taliaferro, the plaintiff in error, who was the widow of said Edward McC. Taliaferro, alleged, in substance, that on May 31, 1894, said Edward McC. Taliaferro came to his death by accident, and not from natural causes, being shot with a pistol by one Henry Frith, at Bunkie, in the state of Louisiana; and under the aforesaid provision of the certificate the plaintiff demanded a judgment against the defendant company in the sum of $4,000. At the trial, which took place before a jury, it was conceded by the parties that the sole question for determination was whether the death of the insured was occasioned by accident, within the meaning of that term as used in the benefit certificate. At the conclusion of the testimony the trial court directed the jury to *369 return a verdict in favor of the defendant company, and the giving of such instruction is the only assigned error which is subject to review. The testimony was very brief. None of the facts stated by the two witnesses who were sworn were denied, and the facts so stated may be summarized as follows: For six weeks prior to May 31, 1894, the deceased and his wife had been boarding with Mrs. Annie C. Frith, at Bunkie, La. On that day the deceased had had some trouble with his wife (the present plaintiff), and had paid his bill, and left the house; and when he left Mrs. Frith directed him not to return. He did return, however, in the evening, while the family were at supper, and inquired of Mrs. Frith for his wife. He was told by her—which was the fact—that Mrs. Taliaferro had left the house, and was stopping with her sister, who lived some three miles out of town. The deceased nevertheless insisted on coming into the house, and did enter the hall. Mrs. Frith then called her son, Henry Frith, who was at the time in the dining room, taking supper. The latter, when called into the hall, directed the deceased to leave the house, as he had been warned not to return. To this the deceased replied that he was not “hunting a difficulty,” but that if he (meaning Henry Frith) “wanted trouble, he could get it.” The latter replied that he did not want any trouble, whereupon the deceased left the house, and went out of the gate. As he was going out of the gate, however, and as Mrs. Frith and her son Henry were going back into the house, having accompanied the deceased to the porch, the deceased asked the said Henry Frith to come outside the gate, as he wished to speak with him. Henry Frith went outside of the gate, as he was requested to do, and entered into a conversation with the deceased, which was carried on at first in a low tone, and apparently in a friendly spirit. What was .said by the parties at first was not understood. The conversation finally became louder, and both parties seemed to become angry. Very soon Frith was heard to say, “I don’t want any trouble,” and the deceased replied, “You must not insult me,” to which Frith answered, “You must not insult me.” Thereupon the deceased was heard to say “he must have revenge; put yourself in shape,” whereupon Frith pulled off his coat, and threw, it upon the fence. Immediately thereafter the deceased pulled a pistol, rushed upon Frith, and struck him with the pistol in the face, knocking him against a tree. Frith then drew his own pistol, and shot the deceased several times, inflicting wounds of which he shortly thereafter died. The deceased did not fire his own pistol, but, after striking his opponent with it in the face, he retired a few steps, still holding it in his hand ready for use. The pistol which the deceased drew, and with which he struck his opponent, was a heavy Colt’s revolver, and the blow delivered in the face was a violent one. The shots fired by Frith were so fired after he had rushed forward and clinched with his antagonist, and had thrown his arm around him. Frith was not a quarrelsome person, but a man of good repute and peaceable disposition. He did not draw his own pistol until the deceased had drawn one and struck him in the face. On this state of facts, which was undisputed, we think the trial court properly ruled that the plaintiff could not recover. From the inception of the difficulty, the deceased appears to *370 have been the aggressor. He was the first to draw a deadly weapon, accompanying that action with the exclamation that “he must have revenge,” and at the same time warning Frith “to put himself in shape.” This can be regarded in no other light than an invitation to a deadly encounter, in which the deceased voluntarily put his life at stake, and deliberately took the chances of getting killed. Where a person thus invites another to a deadly encounter, and does so voluntarily, his death, if he sustains a mortal wound, cannot be regarded as accidental by any definition of that term which has heretofore been adopted. It might as well be claimed that death is accidental when a man intentionally throws himself across a railroad track in front of an approaching train, or leaps from a high precipice, or swallows a deadly poison. It is possible that death may not result from either of these acts, but death is the result which would naturally be expected, and, if such is the result, it is not accidental. The case on which counsel for the plaintiff in error appears to place most reliance is Lovelace v. Association, 126 Mo. 104, 114, 28 S. W. 877, but in that case, while it appeared that- the deceased had engaged in a quarrel which he might very well have avoided, it did not appear that he had drawn a weapon of any sort, or that he knew, when he engaged in the quarrel, that his opponent was armed. So far as the case showed, the deceased had no reason to expect, when he engaged in the rencounter, that it would result in any bodily harm to either party, and for that reason the court appears to have held that the unexpected result of the affray was an accident, so far as the deceased was concerned. The case in question, and the other cases to which our attention has been particularly invited, to wit, Hutchcraft’s Ex’r v. Travelers’ Ins. Co., 87 Ky. 300, 8 S. W. 570, Phelan v. Insurance Co., 38 Mo. App. 640, and Supreme Council Order of Chosen Friends v. Garrigus, 104 Ind. 133, 140, 3 N. E. 818, are clearly distinguishable from the case at bar. According to the undisputed facts disclosed by the present record, the deceased voluntarily engaged in an encounter with deadly weapons, the result of which was not an unlikely result, but was such as any reasonable person might have foreseen. Finding no error in the record, the judgment of the circuit court is accordingly affirmed.