## CARROLL et al. v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Circuit Court, D. South Carolina. May 24, 1905.)

1. ACCIDENT INSURANCE—DEATH BY BLOOD POISONING.

Where insured died from blood poisoning from infection received in an altercation with another, his death was the direct result of bodily injuries sustained through external, violent, and accidental means, within the terms of an accident policy.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 1166, 1170, 1171.

Risks and causes of loss, see note to National Acc. Soc. v. Dolph, 38 C. C. A. 3.]

2. SAME—BREACH OF THE PEACE.

Where deceased and another engaged in a mere fist fight, neither being armed, and there was no reason to expect that the encounter would result in bodily harm to either party, the fact that the injury which caused deceased's death was the result of a breach of the peace did not preclude a recovery on an accident policy containing no special clause vitiating it on that ground.

[Ed. Note.—For cases in point, see vol. 28, Cent. Dig. Insurance, §§ 1149, 1182, 1183.]

H. J. Haynsworth and J. C. Jeffries, for plaintiffs.
Sanders & De Pass and Hall & Willis, for defendants.

BRAWLEY, District Judge. The policy of insurance sued on contains this clause:

"Against disability or death resulting directly and independently of all other causes, from bodily injuries sustained through external, violent and accidental means."

The assured, Frederick G. Stacy, was the president of a National Bank at Gaffney, S. C. He was accused by one Porter, who was somewhat under the influence of liquor, of having taken unfair advantage of him in some business transaction, and other charges calculated to offend and irritate him were made. He started down the street with Porter for the purpose of making an investigation as to the truth of the charges, and, meeting his partner, told him what Porter had said, and his partner then explained the transaction out of which the charge grew. Thereupon Stacy said to Porter, "This shows that you are lying," or words to that effect. Porter replied, "You are a liar yourself," or in like language. Thereupon Stacy struck two blows with his fist, first with his right hand, and a blow with the left hand instantly following, which landed upon Porter's teeth, causing an abrasion. Neither of the parties were armed. In a few days blood poisoning set in, caused, according to the testimony of the medical witness, by microbes in Porter's mouth; the arm was amputated, and death ensued. Upon the trial the facts above briefly stated were proved, and the case was submitted to the jury with these instructions:

"(1) If the injury which resulted in the death of the assured was the natural and probable result of the blow voluntarily and intentionally delivered by the deceased, you will find for the defendant.

"(2) If the injury resulting in the death was something unforeseen, unexpected, and unusual, and was sustained through external, violent, and accidental means, your verdict should be for the plaintiff.

"(3) As there is no clause in this policy which expressly vitiates it when the injury was received while engaged in a breach of the peace, the court instructs the jury that the policy is not avoided unless the cause of the death was the obvious result of the breach of the peace by the assured, and naturally to be expected from the encounter."

The jury found a verdict for the amount of the policy, $5,000, with interest, and this is a motion for a new trial.

The Oxford Dictionary defines an accident as "anything that happens without foresight or expectation; an unusual event, which proceeds from some unknown cause, or is an unusual effect of a known cause; a casualty; a contingency." Webster defines it as "an event that takes place without one's foresight or expectation." Worcester, as "an unforeseen event." The courts have held that where a man is killed by robbers it was death by accident, in the sense in which that word is used in any accident policy. So, too, a death from a blow by a man attempting to blackmail the assured has been held to fall within the terms of the policy. The opposite of accident is design, volition, intent; and the question submitted to the jury was, in substance, whether the effect of the blow was its natural and probable consequence—whether it was one of those results which would ordinarily follow or could have been reasonably anticipated from the act done. In other words, did he intend to produce it, or can he be charged with the design to produce it? By its verdict the jury has found that the death was due to an accident; that it was something unforeseen and unexpected, something fortuitous. It seems to me that the testimony sustains that conclusion, and the only question that remains is whether the verdict should be set aside because this undesigned, unforeseen, and fortuitous occurrence was the result of the breach of the peace. There is no special clause in the policy which vitiates it for that reason, but the contention is that the deceased, having voluntarily engaged in a fight, must be held responsible for the result of it. If the encounter had been with deadly weapons the contention would be sustained, for death or disability would be the natural and not unexpected result of such an encounter. That was the case in Taliaferro v. Travelers' Protective Association, 80 Fed. 368, 25 C. C. A. 494, where Taliaferro, the deceased, was the aggressor from the inception of the difficulty, and the first to draw a deadly weapon, used exclamations which the court said could be "regarded in no other light than an invitation to a deadly encounter, in which the deceased voluntarily put his life at stake, and deliberately took the chances of getting killed." It cites the case of Lovelace v. Association, 126 Mo. 104, 114, 28 S. W. 877, 30 L. R. A. 209, 47 Am. St. Rep. 638, and distinguishes it, saying that, while it appeared in that case that the deceased had engaged in a quarrel which he might very well have avoided, it did not appear that he had drawn a weapon of any sort, or that he knew, when he engaged in the quarrel, that his opponent was armed; that he had no reason to expect when he engaged

in the encounter that it would result in any bodily harm to either party; and for that reason the court appears to have held that the unexpected result of the affray was an accident, so far as the deceased was concerned. It seems to me that this case falls within the principle decided in Lovelace's Case, and that it does not fall within the principle of Taliaferro's Case, which is relied on by the defendants, for the principle decided in that case was this:

"Where a person thus invites another to a deadly encounter, and does so voluntarily, his death, if he sustains a mortal wound, cannot be regarded as accidental by any definition of that term which has heretofore been adopted. It might as well be claimed that death is accidental when a man intentionally throws himself across a railroad track in front of an approaching train, or leaps from a high precipice, or swallows a deadly poison."

To the contention by the defendants that this cannot be called an accident, because it was the result of the voluntary act of the deceased, Barry's Case, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60, seems an answer. In that case death resulted from injuries sustained by jumping off a platform, and it was contended in the court below that, the jumping being a voluntary act, it could not be called an accident; that he did nothing but what he intended to do. But the court below instructed the jury that if, in jumping or alighting on the ground, there occurred from any cause any unforeseen or involuntary movement, turn, or strain of the body which brought about the injury, or if there occurred any unforeseen circumstance which interfered with such a downward movement as he expected to make, or as it would be natural to expect under such circumstances, which caused him to alight on the ground in a different position or way from that which he intended or expected, and injury thereby resulted, then the injury would be attributable to accidental means. The Supreme Court held that there was no error in this instruction; that the term "accidental" was used in the policy in its ordinary sense, as meaning happening by chance, unexpectedly taking place, not according to the usual course of things, or not as expected; that if the result is such as follows from ordinary means, voluntarily employed, in a not unusual or unexpected way, it cannot be called a result effected by accidental means, but that if in the act which precedes the injury something unforeseen, unexpected, unusual occurs which produced the injury, then the injury has resulted through accidental means.

The motion for a new trial is refused.