## Prudential Casualty Co. *v.* Curry.

*Action on Accident Insurance Policy.*

(Decided June 9, 1914. 65 South. 852.)

*Insurance; Accident; Accidental Means.*—Where insured brought on a difficulty with a third person, knowing that such person was armed with a gun, and such person shot insured in self-defense, insured's death was not caused or occasioned by accidental means, for an accident may be said to be an unforeseen or unexpected event of which insured's own misconduct is not the natural and proximate cause, and hence a result ordinarily flowing from the conduct of insured, or naturally flowing therefrom, cannot be said to be an accident, even when he may not have foreseen the consequences; the happening of an event to be termed accidental, or an accident, must not only be unforeseen, but without the design and aid of the insured.

APPEAL from Birmingham City Court.

Heard before Hon. H. A. SHARPE.

Action by Beatrice Curry against the Prudential Casualty Co. upon an accident insurance certificate. Judgment for plaintiff and defendant appeals. Reversed and rendered.

DAVID S. ANDERSON, for appellant. There is but one question presented by this appeal, and that is did Mc-Elreath, the insured come to his death by accident, or violent and accidental means. Under the evidence in this case, that question must be answered in the negative, and the defendant given the general charge.—6 Cush. 292; 8 Wend. 469; 1 Cyc. 228; *Equitable Ins. Co.*

[Prudential Casualty Co. v. Curry.]

*v. Osburn,* 90 Ala. 201; 23 Amer. St. Rep. 455; 40 L. R. A. 65625 Amer. St. Rep. 685; 12 Amer. St. Rep. 484; 143 Fed. 273; 80 Fed. 36876 N. W. 562; 1 Beach on Ins. 254.

GASTON & DRENNEN, for appellee. Under the following authorities it must be held that the agreed statement of facts make out a case of accidental death within the meaning of the term in the insurance policy.—1 Cyc. 228; 30 Pa. St. 247; 24 Wis. 28; 8 Amer. St. Rep. 758; 60 Id. 875; 25 Id. 685; 90 Ala. 201; 30 L. R. A. 207; 3 N. E. 824; 47 Amer. St. Rep. 638; 131 U. S. 120; 8 Amer. St. Rep. 212.

PELHAM, J.—The appellee, being the beneficiary under a policy of accident insurance issued by the appellant to one Jesse McElreath, insuring him against death from bodily injuries sustained through "external, violent, and accidental means," brought suit in the trial court to recover of the appellant on the policy. The case was tried before the court without a jury, result ing in a judgment against appellant holding it liable under the terms of the policy.

The evidence was without conflict, and the case was submitted to the court on an agreed written statement of facts. It was shown by this agreed statement of facts that on a certain occasion one Tom Teague in traveling along the public road going home from his place of work passed in front of the home of the insured, Jesse McElreath; that Teague at the time carried in his hands, in plain view, a rifle gun he had just purchased and was taking home. When Teague came in view of McElreath, who was at his home, the latter procured a Winchester rifle from his house, and as Teague in going along the road was passing the house,

McElreath stepped out on his front porch and presented his rifle at Teague, having the rifle at the time "cocked and ready to shoot Teague." When thus presenting the rifle in shooting distance, cocked and ready to shoot, McElreath accosted Teague and wanted to know "what in hell he had to do with some women, or words of like character and meaning"; whereupon Teague raised the rifle gun he was carrying and shot McElreath dead, the cocked gun presented at Teague by McElreath falling from McElreath's hands to the ground, where it was picked up and discharged in an attempt to uncock it by the person picking it up.

But one question is presented for our consideration on this appeal, and that is: Did the insured, McElreath, under the circumstances shown by the undisputed evidence, the substance of which we have set out, meet his death through "external, violent, and accidental means," within the meaning of that clause of the policy of insurance? In other words, was the violent death which McElreath met at the hands of his slayer, Teague, accidental in the sense used as to McElreath, the insured party?

What constitutes an "accident" within the meaning of an accident insurance policy has been the subject of much discussion by text-book writers, and the courts, both federal and state, have expended much learning, often drawing copiously upon the understanding and skill of expression of lexicographers, in attaching the proper significance and meaning to the word "accidental" in stating a fixed general rule of law on the subject, and attempting to fit it to a concrete case in hand; some of the judges even considering (but adopting) the meaning of the word as employed in insurance contracts with respect to scholastic philosophy, in which sense nothing is accidental. The Supreme Court

of this state has, however, approvingly quoted the general definition given in 1 Am. & Eng. Ency. Law (1st Ed.) p. 87, as follows:

"An accident, in its application to insurance policies, has been defined as an injury which happens by reason of some violence casualty, or vis major, to the assured, without his design or consent or voluntary co-operation."—*Equitable Accident Ins. Co. v. Osborn, Adm'r,* 90 Ala. 201, 206, 9 South. 869, 13 L. R. A. 267.

In the second addition of this work (Am. & Eng. Ency. Law), accident in this connection is defined thus:

"An accident, according to the generally received meaning of the term, is defined as the happening of an event without the aid and design of a person, and which is unforeseen, and in this sense the word is to be understood, in the absence of plain, unequivocal exceptions and provisions, in a policy insuring against injury or death caused by accidental means."—Volume 1, pp. 291, 292.

As said in *Western Com. Trav. Ass'n v. Smith,* 85 Fed. 401, 405, 29 C. C. A. 223, 227 (40 L. R. A. 653):

"The significance of this word 'accidental' is best perceived by a consideration of the relation of causes to their effects. The word is descriptive of means which produce effects which are not their natural and probable consequences. The natural consequences of means used are the consequences which ordinarily follow from their use—the results which may be reasonably anticipated from their use, and which ought to be expected. The probable consequence of the use of given means is the consequence which is more likely to follow from their use than it is to fail to follow. An effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced

by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of his deeds."

It is difficult, if not quite impossible, to define the term "accident" as used in a policy of this nature, so as to draw with perfect accuracy a boundary line applicable to all cases between injury or death from accident and from other or different causes, and we shall not attempt to state a definition of universal application. But, as applied to the facts in the instant case, where the conduct of the injured party was voluntary and not characterized by any act of negligence, and where no element of negligence or carelessness can properly enter into the consideration, an accident may be said to be an unforeseen or unexpected event of which the party's own misconduct is not the natural and proximate cause, and hence the result ordinarily and naturally flowing from the conduct of the party insured cannot be said to be accidental, even when he may not have foreseen the consequences.—*Dozier v. Fid. & Cas. Co.* (C. C.) 46 Fed. 446, 13 L. R. A. 114. The happening of an event, to be properly termed an accident in the sense in which we are considering it, must not only be unforeseen, but without the design and aid of the person.—2 Bigelow's L. & A. Ins. Reps. 738; *Paul v. Travelers' Ins. Co.,* 112 N. Y. 472, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758; *Williams v. U. S. Mut. Acc. Ass'n,* 14 N. Y. Supp. 728; *Aetna Life Ins. Co. v. Vandecar,* 86 Fed. 282, 285, 30 C. C. A. 48. So, although a result may not be designed, foreseen, or expected, yet, if it be the natural and direct effect of acts voluntarily done, or of conditions voluntarily assumed, it cannot be said to be accidental.—*Feder v.*

*Iowa S. Trav. Men's Ass'n,* 107 Iowa, 538, 78 N. W. 252, 43 L. R. A. 693, 70 Am. Stc. Rep. 212.

The facts in the case of *Taliaferro v. Travelers' Protective Ass'n,* 80 Fed. 368, 25 C. C. A. 494, cited by the appellant, are more similar to those in the case presented by this record than any case to which our attention has been called, or that our investigation has discovered. In that case the insured was the aggressor in a personal difficulty resulting in his death. He voluntarily engaged in an encounter with another, striking him a heavy blow in the face with a pistol, whereupon the assaulted party drew a pistol from his pocket and shot his assailant (the insured), inflicting wounds from which he shortly thereafter died. The court held that under such a state of circumstances the death of the insured was not an accident, and that his beneficiary could not recover under the clause in the policy insuring against death produced through accidental means. The court in the opinion rendered in the case says that the acts of the insured "can be regarded in no other light than an invitation to a deadly encounter, in which the deceased voluntarily put his life at stake, and deliberately took the chances of getting killed."—80 Fed. 370, 25 C. C. A. 495. It was shown in the case from which we have above quoted that the party assaulted by the insured was not a quarrelsome person, but a man of good repute and peaceable disposition; and it was not shown that the insured knew he was armed at the time of entering into the difficulty. Yet the court held that, "according to the undisputed facts disclosed by the present record, the deceased voluntarily engaged in an encounter with deadly weapons, the result of which was not an unlikely result, but was such as any reasonable person might have foreseen."

The case of *American Accident Co. of Louisville v. Carson* (Ky.) 30 S. W. 879, is probably the most extreme case supporting the appellant's contention that we have investigated; but we are not prepared to entirely agree with what is said in the opinion of that case as applied to the meagre facts disclosed in the printed report. The facts set out show that an officer in the discharge of his duties while making an arrest was shot and killed by the prisoner while attempting to effect his escape. The circumstances and conditions under which the arrest was made and the escape attempted are not shown in the report of the case, but the court held that it would be "wholly without reason" to say that the officer came to his death by accidental means, so that his beneficiary could recover under the condition of the policy insuring the holder against injuries through external, violent, and accidental means.

In applying the correct rule to the facts presented in the instant case, we wish to say that we do not question, but entirely agree with, those authorities holding that when the injury results from engaging in a personal encounter not due to the misconduct or co-operation or voluntary participation of the injured party, but is entirely unforeseen, it is, as to him, accidental, although inflicted intentionally by the other party. In this case it appears from the undisputed facts that the insured, McElreath, was at fault in bringing on the difficulty that resulted in his death, and that he accosted Teague, who was passing along the public road, and whom he knew to be armed with a deadly weapon, profanely challenging his relation with "some women" and presenting a Winchester rifle at Teague, "cocked and ready to shoot Teague." That Teague should thereupon defend himself by shooting and mortally wounding McElreath with the rifle gun he carried in plain

[Prudential Casualty Co. v. Curry.]

view could not be said to be unforeseen to McElreath. On the contrary, it was an act that McElreath could reasonably have foreseen as the natural and probable consequence resulting from his misconduct—a probable result that he ought reasonably to have expected or anticipated. The effect produced by the conduct of McElreath was the natural and probable consequence of his course of action, which, if he did not in fact foresee and intend, he must be held to have foreseen and intended, as being responsible for the natural and probable consequences of his voluntary acts. The conduct of McElreath, under the undisputed proof, as in the case of Tailiaferro, supra, "can be regarded in no other light than an invitation to a deadly encounter, in which the deceased voluntarily put his life in stake, and deliberately took the chances of getting killed." The risk of death having been voluntarily assumed under these circumstances by the insured, McElreath, and death having been produced by those means which were reasonably calculated to cause it, his death cannot be said to have been an accident under the terms of the policy insuring against death through accidental means; nor can it be said to have been produced through accidental means.

It is our opinion, based upon the foregoing conclusions, that the trial court was in error in rendering judgment for the plaintiff below (appellee), and judgment will be here entered for the appellant.

Reversed and rendered.