[S. F. No. 6947. Department One.—July 1, 1916.]

## ANNA POSTLER, Respondent, v. TRAVELERS INSURANCE COMPANY (a Corporation), Appellant.

ACCIDENT INSURANCE—BURDEN OF PROOF—ACCIDENTAL MEANS OF DEATH —SUICIDE.—In an action on a policy of accident insurance, under which the insured was indemnified "against bodily injuries effected directly and independently of all other causes through external, violent, and accidental means," suicide, whether sane or insane not being covered, the burden of proof to establish the issue of suicide is on the defendant; on the issue as to whether or not the death of the insured had been effected through "accidental means," the burden of proof is on the plaintiff.

ID.—DEATH RESULTING FROM ENDEAVOR TO EXTORT MONEY AT POINT OF PISTOL—NATURAL AND PROBABLE CONSEQUENCES OF ACTION.—The insured, having lost money at gambling, armed himself, and declaring his intention of getting back his money, went to the gambling-house and there undertook to compel the payment of one thousand dollars at the point of a pistol. While engaged in this effort, an encounter took place between him and one of the men who was in the place when he arrived, in the course of which he was killed. *Held*, that his death was the natural and probable consequence of his actions, and was not accidental within the meaning of the policy, and that it was immaterial who fired the first shot in the encounter.

ID.—CONSTRUCTION OF POLICY—QUESTION OF LAW.—The construction of the exceptions contained in the policy was a matter of law for the court.

ID.—PRESUMPTION ARISING FROM VIOLENT DEATH—EFFECT OF.—Where a violent death has occurred the presumption, in the absence of further evidence, is in favor of accidental death and against suicide. This presumption is, however, merely an item in the evidence, and does not impair the force of the rule that on the whole evidence, including the presumptions, the plaintiff must show as a part of his case, the fact that the injuries were effected by accidental means.

CLXXIII Cal.—1

APPEAL from a judgment of the Superior Court of the City and County of San Francisco, and from an order refusing a new trial. Adolphus E. Graupner, Judge.

The facts are stated in the opinion of the court.

Coogan & O'Connor, for Appellant.

F. J. Castelhun, for Respondent.

SLOSS, J.—The plaintiff, wife of Gustave Postler, was the beneficiary named in two policies of accident insurance issued by the defendant to said Postler. By each of the policies Postler was insured in the principal sum of one thousand dollars "against bodily injuries effected directly and independently of all other causes through external, violent, and accidental means (suicide, whether sane or insane, is not covered)." The complaint alleged that on the twenty-seventh day of January, 1911, said Gustave Postler "received a bodily injury through external, violent and accidental means . . . to wit, by the discharge of a revolver in the hands of one Ed. Kripp, which said injuries caused the immediate death of said Gustave Postler." These allegations are denied by the answer, which also set up as a separate defense that Postler committed suicide.

The case was tried before a jury, which returned a verdict in favor of plaintiff for the full amount claimed on both policies. The defendant appeals from the judgment entered upon this verdict, and from an order thereafter made denying its motion for a new trial.

There was some conflict in the evidence, but the facts which we are about to state appear in the testimony without substantial dispute. Postler was a painter, living with his wife and son in San Francisco. He had visited the Saratoga Club, a gambling resort located on Mason Street in the said city, and had, apparently, lost money in gambling there. On January 27, 1911, Postler left his home accompanied by his son, a boy of about sixteen years. They were riding in a buggy. After going to various places, among others a hardware store where Postler bought a revolver and some cartridges, he, with the boy, drove to the location of the Saratoga Club on Mason Street, arriving there about noon. During

the morning Postler had told his son that he was going to get back the money he had lost. Leaving the boy in the buggy, Postler went up in the elevator to the rooms of the Saratoga Club. There he found four or five men, among whom was one in charge of the place. After a few minutes, he drew his revolver and ordered the men present to hold up their hands. Two or three of them, including Kripp, ran out of the room, and Kripp found his way to the sidewalk, where he encountered a police sergeant, from whom he obtained a pistol. Learning from Postler's son that the man upstairs was the boy's father, Kripp asked the boy to go up with him to induce the father to leave peaceably. Kripp and young Postler then went up in the elevator. In the meanwhile, Postler had demanded of the men whom he was holding under cover of his revolver the sum of one thousand dollars, saying that he had come up there to get the money and if he did not get it he was going to kill somebody and kill himself. Goodrich, the man in charge, told him he could have the money and produced it. He counted out one thousand dollars, which he placed on a table. Postler took the money and put most of it in his pocket, some part of it dropping to the floor in the process. At this stage of the affair, Kripp and the boy appeared. The boy urged his father to give up the money, but the father put him aside. Postler then observed Kripp standing at the door of the room and ordered him to come in. Kripp turned and ran, followed by Postler. The two were thus brought into a room adjoining the one in which the boy and the other men stood: There was an exchange of shots between Kripp and Postler, and Postler fell mortally wounded. The evidence does not make it clear whether Postler or Kripp fired the first shot.

There was some evidence which, so the defendant claimed, tended to show that Postler had himself fired the shot which ended his life. On the issue of suicide the burden of proof rested upon the defendant (*Dennis* v. *Union Mutual Life Ins. Co.*, 84 Cal. 570, [24 Pac. 120]), and it cannot be questioned that the jury was fully justified in finding that this burden had not been sustained.

But the defendant relied, in addition, upon its denial that the injuries which caused Postler's death had been effected through accidental means. On this issue the burden of proof was upon the plaintiff. "The plaintiff was bound to estab-

lish as a part of her case that death resulted from accident. It was not incumbent upon the defendant to negative accident. . . . In order to recover the plaintiff was bound to allege and prove an injury of a kind covered by the contract, i. e., one effected through external, violent, and accidental means.'' (*Price* v. *Occidental Life Ins. Co.*, 169 Cal. 800, 802, [147 Pac. 1175]; *Jenkin* v. *Pacific Mutual Life Ins. Co.*, 131 Cal. 121, [63 Pac. 180]; *Rock* v. *Travelers' Ins. Co.*, 172 Cal. 462, [156 Pac. 1029].) The appellant contends, and we think upon good ground, that under any reasonable view of the evidence, the injuries suffered by Postler were not produced by accidental means, but were the natural and probable consequence of his own voluntary acts. In *Western Commercial Travelers' Assn.* v. *Smith* (85 Fed. 401, 405, [40 L. R. A. 653, 29 C. C. A. 223]), the court said that "an effect which is the natural and probable consequence of an act or course of action is not an accident, nor is it produced by accidental means. It is either the result of actual design, or it falls under the maxim that every man must be held to intend the natural and probable consequence of the means which produced it. . . . " (See, also, 4 Cooley's Briefs on Insurance, p. 356; *Fidelity etc. Co.* v. *Stacey's Exrs.*, 143 Fed. 271, [6 Ann. Cas. 955, 5 L. R. A. (N. S.) 657, 74 C. C. A. 409]; *Price* v. *Occidental Ins. Co.*, 169 Cal. 800, [147 Pac. 1175]; *Rock* v. *Travelers' Ins. Co.*, 172 Cal. 462, [156 Pac. 1029]; *Hutton* v. *State Accident Co.*, 267 Ill. 267, [Ann. Cas. 1916C, 577, L. R. A. 1915E, 127, 108 N. E. 296]; *Prudential Casualty Co.* v. *Curry*, 10 Ala. App. 642, [65 South. 852].) In *Price* v. *Occidental Life Ins. Co.*, we had occasion to deal with a situation somewhat similar to the one before us. The insured had been killed by the discharge of a revolver held in the hands of another person. It was held that ''if it should appear that the killing had been the result of an encounter with deadly weapons, and that the deceased had himself invited and brought on such conflict, the fatal result would not have been accidental so far as he was concerned.'' The decision of the United States circuit court of appeals in *Taliaferro* v. *Travelers' Protective Assn. of America* (80 Fed. 368, [25 C. C. A. 494]), was cited with approval. There the court upheld a directed verdict in favor of the insurance company, it appearing that the insured had invited another to a deadly encounter which had resulted in his killing.

Under the undisputed facts, we do not see how the case at bar can be taken out of the principle of those just referred to. Postler, after arming himself and declaring his intention of getting back his money, had gone to the gambling-house and had there undertaken to compel the payment of one thousand dollars at the point of a pistol. While he was engaged in this effort, an encounter took place between him and one of the men who was in the place when he arrived. In the course of this encounter he was killed.

A man who attempts to obtain money from others by the display of a deadly weapon, aiding such display by threats of killing, must contemplate, as the natural and probable consequence of his actions, that there will be resistance to or interference with the consummation of his plan, and that such resistance or interference will be likely to result in armed conflict and serious injury to one or more of the participants. To all intents and purposes, Postler's position, so far as concerns the probable consequences of his acts, was that of any man who attempts robbery at the point of a firearm. If such a man were killed by his intended victim, it could hardly be claimed that his death was caused by "accidental means," in the sense in which those words are used in policies like the ones before us. We are not suggesting that, from an ethical standpoint, Postler's action was to be judged by the standards which would be applied to the commission of an ordinary robbery. The conditions under which he had lost his money in gambling may have been such as to make him feel, whether rightly or wrongly, that he was justified in resorting to extreme and lawless measures in the effort to recoup his losses. But these considerations do not affect the ultimate question, which is whether the killing was the natural and probable consequence of his own voluntary acts. Under the authorities above cited, this question must be answered in the affirmative. (See, also, *Hutton* v. *State Acc. Co.*, 267 Ill. 267, [Ann Cas. 1916C, 577, L. R. A. 1915E, 127, 108 N. E. 296] ; *Prudential Casualty Co.* v. *Curry,* 10 Ala. App. 642, [65 South. 852].)

In reaching the conclusion just indicated, it is immaterial whether the first shot was fired by Postler or by Kripp. Conceding that there is evidence to show that Kripp fired the first shot, it still remains that such shooting was the consequence naturally to be anticipated by a man taking the course which Postler took. The respondent makes the suggestion

that the verdict may be upheld on the theory that Postler came to his death through a shot accidentally fired from his own revolver. There is, however, no evidence which would warrant the inference that such was the fact. Every probability is against it, and besides, plaintiff alleges in her complaint that Postler's death was the result of a gunshot wound inflicted by the discharge of a revolver in the hands of Kripp.

Some of the instructions to the jury were inaccurate, but since the case must be remanded for the reasons already stated, these matters need but brief mention. Instruction IV, stating the rule for interpreting exceptions in a policy of insurance, should not have been given to the jury. It stated the rule correctly, but the construction of the contract was a matter of law for the court, and the jury could not have been aided by this instruction in deciding the questions of fact submitted to them. Instruction IX was misleading. We shall not here quote the instruction, but content ourselves with repeating that upon the issue whether the death was effected by accidental means the burden of proof was on the plaintiff, and she was not entitled to recover unless she satisfied the jury by a preponderance of evidence that the injuries had been so inflicted. On the issue of suicide, on the other hand, the burden of proof was on the defendant and before it could prevail on this ground it was bound to establish by the evidence that Postler's death had been caused by suicide. It is true that where a violent death has occurred the presumption, in the absence of further evidence, is in favor of accidental death and against suicide. (*Jenkin* v. *Pacific Mut. Life Ins. Co.*, 131 Cal. 121, [63 Pac. 180].) This presumption is, however, merely an item in the evidence, and does not impair the force of the rule that on the whole evidence, including the presumptions, the plaintiff must show as a part of her case the fact that injuries were effected by accidental means.

In instruction X the court told the jury that the defense set up by the defendant was an affirmative defense to be established by the defendant by a preponderance of testimony. The instruction should have been limited to the defense of suicide. Stated in general terms it might have been understood to apply to the defense that the injury was not received through accidental means. As so applied it did not state the true rule of law.

There were other instructions which correctly stated the rule with reference to the burden of proof on the various issues. Upon another trial, if the case is to be retried, there should be no difficulty in modifying or eliminating the instructions which we have criticised, so that there may be no conflict in the charge taken as a whole.

The judgment and the order denying a new trial are reversed.

Shaw, J., and Lawlor, J., concurred.

Hearing in Bank denied.