GEORGIA CASUALTY CO. v. SHAW et al.
(No. 7413.)

(Court of Civil Appeals of Texas. Galveston.
June 6, 1917. Rehearing Denied
June 28, 1917.)

1. INSURANCE ⟨⟩665(5) — ACCIDENT INSURANCE — ASSAULT ON INSURED — SUFFICIENCY OF EVIDENCE.

In suit on an accident insurance policy, evidence *held* sufficient to justify the jury in finding that insured who was shot in a difficulty, was not the aggressor.

2. INSURANCE ⟨⟩665(5) — ACCIDENT INSURANCE—BURDEN OF PROOF—PRESUMPTION.

The burden to make out their case, resting upon plaintiffs suing on an accident insurance policy, was met by their proof that insured's death was caused by external and violent means, a presumption of law then arising that the death was caused by accidental means, thus making a prima facie case.

3. INSURANCE ⟨⟩646(6) — ACCIDENT INSURANCE—KILLING IN SELF-DEFENSE.

Where plaintiffs, suing on an accident insurance policy, proved that insured's death was caused by external and violent means, to overcome the prima facie case thus made by the defense that insured was killed in course of an assault upon another it was necessary for the insurer to show that a felonious assault was first made by insured upon the other, that insured was the aggressor, and that he met his death at the hands of the assaulted person in self-defense.

4. APPEAL AND ERROR ⟨⟩226(2)—ATTORNEY'S FEES.

In suit on an accident insurance policy, where, beyond merely objecting to an allowance of $1,500 as attorney's fees at the time made, defendant, made no effort on trial to show either the unreasonableness of the amount, or the impropriety of such fees, and the question of the attorney's fees was not submitted to the jury, being determined by the court at the close of the trial by the acquiescence, of defendant, on uncontroverted pleadings and undisputed proof as to the reasonableness of the amount awarded, defendant cannot complain of the same on appeal.

5. EVIDENCE ⟨⟩544 — EXPERT TESTIMONY — COMPETENCY OF WITNESS.

In suit on an accident policy, where the coroner's report on the death of one charged by the insurer to have been shot by the insured was incorporated by reference into a hypothetical question to a medical witness, and the report gave a description of the wound asked about, showing its point of entrance and its point of exit, the caliber of bullet used, and the style of gun, the medical witness, an experienced physician, widely experienced with the effects of gunshot wounds, who had examined the wound in the insured, which had been caused by a bullet fired from the same gun, had sufficient knowledge of the facts on which to pass an expert opinion.

Appeal from District Court, Galveston County; Clay S. Briggs, Judge.

Suit by Ella Shaw and others against the Georgia Casualty Company. From a judgment for plaintiffs, defendant appeals. Affirmed.

Frank S. Anderson, of Galveston, for appellant. Stewarts, of Galveston, for appellees.

GRAVES, J. Appellees brought this suit in the district court of Galveston county against Georgia Casualty Company, appellant, to recover the sum of $7,500, being the value of an accident insurance policy issued by appellant to Robert G. Shaw, the insured, in which appellee, Ella Shaw, is named as beneficiary. Appellees pleaded that the insured, Robert G. Shaw, died February 17, 1916, from septicemia, or blood poisoning, resulting directly from a gunshot wound received by him on February 1, 1916; that such injuries were effected through violent, external, and accidental means, and that the policy issued by appellant covered that class of injuries at the time they were received by insured. They also pleaded proof of loss and demand for payment more than 30 days before institution of suit, the failure and refusal of appellant to pay, and the employment of an attorney. Appellees asked judgment in the sum of $7,500, the face of the policy, plus $900 statutory damages of 12 per cent. for failure to pay the amount of the policy promptly, plus $2,500, alleged to be reasonable attorney's fees for prosecution of the suit. Appellant denied these allegations, and alleged that Robert G. Shaw, the insured, assaulted George A. McLarty with intent to kill him; that McLarty in self-defense shot insured, Shaw, causing the wounds from which insured died, and that the wounds received by Shaw were therefore not received by accidental means. The court submitted the case on special issues, as follows:

"(1) Did Robert G. Shaw unlawfully assault and shoot George A. McLarty with a loaded rifle with the intent to kill him?

"(2) If you answer question No. 1 in the affirmative, then will you answer, Did Shaw receive the injuries from which he died while McLarty was resisting and repelling such assault in self-defense?"

The jury answered the first question in the negative. Judgment was entered on the 14th day of July, 1916, in favor of appellees against appellant for the sum of $7,500, the amount of the policy sued on, the sum of $900, statutory damages of 12 per cent. for delay, and the further sum of $1,500, found by the court to be reasonable attorney's fees, making a total of $9,900, from which judgment the casualty company prosecutes its appeal.

At the close of all the evidence the casualty company made the following agreement or concession:

"Defendant admits that the plaintiff is entitled to recover upon the policy sued upon herein, and that Robert G. Shaw came to his

death by violent, external, and accidental means, unless the jury should make affirmative answers to both special issues No. 1 and No. 2 submitted, and the defendant be entitled, as a matter of law, to a judgment thereon."

Upon this state of the record, the main question in the case is whether it was shown that Shaw came to his death by accidental means, within the meaning of the policy, and whether it was or not depends alone, under this quoted agreement, on the sufficiency of the evidence to sustain the jury's negative answer to special issue No. 1; in other words, if the evidence did not require the jury to find that Shaw both unlawfully assaulted and shot McLarty with intent to kill him, and also received his mortal injuries at McLarty's hands while the latter was in self-defense resisting such assault, then a judgment of recovery upon the policy was admittedly proper.

Accordingly, in its first four assignments, appellant attacks the sufficiency of the evidence to sustain the jury's answer to special issue No. 1, contending that the answer was not only contrary to, unsupported by, and against the obvious weight of any evidence in the case, but was the opposite conclusion to that which ordinary minds would be led to. After a most painstaking review and consideration of the evidence, we are unable to agree with appellant. It has with marked discrimination and ingenuity woven a most persuasive web of circumstantial evidence, and therefrom deduced a most plausible conception of how the double tragedy was enacted, but at most and best it is but a theory, something which, when applied to past events, can never be demonstrated, a creature of the mind. Likewise, and with no differences except, perhaps, in degree of probability, the appellees have from the same body of testimony erected their own structure of speculation upon how it occurred; and, in our opinion, the state of the entire evidence was such as to make it legitimately susceptible of the application of either theory, according to the individual viewpoint. The testimony of the various witnesses is almost free of contradiction and of discrepancy. The double homicide occurred in a room in the Cotton Exchange Building in Galveston, with only its two victims present in that room at that particular time. It was vouchsafed to no one who testified to see either the actual inception or the consummation of the difficulty between the two participants that within a few moments resulted in the death of the one and the mortal wounding of the other; nor, indeed, was any witness able to say that he saw either man actually shoot at the other, although the witness Kerr did state, after the first shot, he turned toward the open door of the Cotton Exchange office and saw Mr. Shaw pointing a gun towards the east or northeast; that, not desiring to see more, he turned away, but after hearing a second shot, he returned, looked in the door a second time, and did not see Shaw, but saw McLarty standing up in a different part of the room from where he was last seen about two or three minutes before the shooting; that he then went out of sight again, and afterwards heard the third and last shot fired. As already indicated, no other witness saw or heard as much; and even he admitted:

"I don't know whether McLarty came in there and attacked Shaw or whether Shaw attacked McLarty."

Dr. Gammon, whose testimony and knowledge of the conditions upon which it was based, is hereinafter more fully referred to, after having the two wounds of McLarty described to him, was asked the direct question, "What effect would those wounds have had," and replied:

"The bullet that entered—that would enter, and just such a bullet as this was, fired into Robert Shaw's body, when entering near the right shoulder might or might not produce instant death; but a bullet fired, striking near the pit of the stomach, and taking a range that would bring it out near the right shoulder, would surely sever the aorta and vena cava, the two great blood vessels that lead from the heart to the lower part of the body, and cause instant death. Q. When you say 'instant death,' what effect would be produced on a man as to what he would be able, if anything, to do? A. Well, severing blood vessels of that size, as near the heart as those vessels would be in the track of the bullet, entering at the pit of the stomach and coming out under the right shoulder, the character of this bullet—the character of the wound it made, lacerates completely all of the tissues in that track and for a distance around it, and, judging from the injury done to the muscles of Shaw, I think that that bullet would surely cut those two large vessels, which would instantly, with the first contraction of the heart, empty the heart of all of the blood contained therein; at the next dilation would empty the brain of all of the blood there, and that the man would drop to the floor within three seconds after the ball struck him."

[1] It thus conclusively appears, we think, not only that there is a fatal hiatus in the actual proof as to which man began the difficulty, committed an assault, or fired the first shot which, however much or mathematically we may theorize upon the elaborate network of physical facts and conditions shown in the record, cannot be supplied, but that there was sufficient evidence in the record as a whole to have justified the jury in concluding that Shaw was shot first, hence committed no assault, and that McLarty was the aggressor and assaulted him. Indeed, they must have reached that conclusion if they accepted Dr. Gammon's quoted opinion as correct; because, under that, it would have been a physical impossibility for McLarty to have operated and shot Shaw with the kind of gun the only one he could have used was shown to be, after receiving such wounds as he had; nor do we know that the jury did not in fact take this view, since their finding merely was that Shaw did not unlawfully assault and shoot McLarty with intent to kill him. Hence we are not at liberty to set their verdict aside. The four

assignments raising this question must therefore be overruled.

From these conclusions it must also follow that a discussion of the question of the burden of proof upon appellants' specially pleaded defense that Shaw assaulted McLarty with intent to kill him, but was in turn killed by McLarty, who acted in self-defense, would be purely academic. We think the proof offered upon this defense would have been admissible under the general denial without the necessity of specially pleading it, as was done.

[2-4] It is further true that the burden upon the whole case to make out their case as pleaded was upon appellees, and that it never shifted from them to appellant; but we think this burden was met by their proof that the death of the insured was caused by external and violent means, and that, as between them and the insurer, a presumption of law then arose that such death was caused by accidental means; a prima facie case was thus made, but some rebutting evidence having been offered, the question was still one for the jury's determination from the preponderance of all the evidence. Yeaman v. Galveston City Co., 190 S. W. 212; Sovereign Camp of Woodmen of the World v. Boehme, 44 Tex. Civ. App. 159, 97 S. W. 847; Grand Lodge v. Green, 62 Tex. Civ. App. 366, 131 S. W. 442; Sovereign Camp v. McCulloch, 192 S. W. 1154; Travelers' Ins. Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308; Lovelace v. Travelers' Protective Ass'n, 126 Mo. 104, 28 S. W. 877, 30 L. R. A. 209, 47 Am. St. Rep. 638; Accident Ins. Co. v. Bennett, 90 Tenn. 256, 16 S. W. 724, 25 Am. St. Rep. 685.

[5] In order to overcome the case thus made, through the single defensive matter here set up, the felonious assault and its repulsion in self-defense, it became, under all the authorities, necessary that it be shown that such character of assault was in fact first made by the insured, that he was the aggressor, and that he met his death at the hands of the assaulted person while in self-defense repelling it; this much is held necessary by, and proof of it is the basis for the decisions of, the cases cited and relied upon by appellant casualty company; United States Mutual Accident Ass'n v. Barry, 131 U. S. 100, 9 Sup. Ct. 755, 33 L. Ed. 60; Fidelity & Casualty Co. v. Stacey's Executors, 143 Fed. 271, 74 C. C. A. 409, 5 L. R. A. (N. S.) 657, 6 Ann. Cas. 955; Taliaferro v. Travelers' Protective Ass'n, 80 Fed. 368, 25 C. C. A. 494; Prudential Casualty Co. v. Curry, 10 Ala. App. 642, 65 South. 852; Travelers' Ins. Co. of Hartford v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308; Postler v. Travelers' Ins. Co., 173 Cal. 1, 158 Pac. 1022–1024. In fact, its above-quoted agreement as to the legal effect of an answer, provided it was properly grounded in the evidence, to the two particular questions submitted as special issues to the jury, without objection to them, or request for the submission of other or different issues, presupposes its concession that recovery must go for appellees, unless it at least appeared from the evidence that an assault was both committed and repelled in the manner and with the effect therein inquired about; likewise, the answering authorities presented by appellees hold as much, but some of them qualify the broad rule, permitting the insurer to defeat a recovery by showing that the insured met death at the hands of one in self-defense resisting, whom he had first aggressively assaulted, by observing that the circumstances must have been such that it reasonably appeared to the insured that death would be his probable portion as a result of making such assault. Sovereign Camp of Woodmen of the World v. Boehme, 44 Tex. Civ. App. 159, 97 S. W. 847; Ency. of Evidence, vol. 7, pp. 549, 551; Cronkhite v. Ins. Co., 75 Wis. 116, 43 N. W. 731, 17 Am. St. Rep. 184; Accident Ins. Co. v. Bennett, 90 Tenn. 256, 16 S. W. 724, 25 Am. St. Rep. 685; Beard v. Ins. Co., 65 W. Va. 283, 64 S. E. 119; Wilkinson v. Life Ins. Co., 240 Ill. 205, 88 N. E. 550, 25 L. R. A. (N. S.) 1256, 130 Am. St. Rep. 269; Bryant v. Casualty Co. (Sup.) 182 S. W. 673, L. R. A. 1916E, 945; Lovelace v. Travelers' Protective Ass'n, 126 Mo. 104, 28 S. W. 877, 30 L. R. A. 209, 47 Am. St. Rep. 638: Union Cas. & Surety Co. v. Harroll, 98 Tenn. 591, 40 S. W. 1080, 60 Am. St. Rep. 873; Prudential Cas. Co. v. Curry, 10 Ala. App. 642, 65 South. 852.

Applying these holdings to the developed facts of the case at bar, as we have so found them to be, it at once becomes apparent that nothing could be accomplished by a detailed discussion of either line of these cases, because they all agree as to the sine qua non of a defeat of liability; that is, the kind of an assault here involved, the very thing we find was not proven; since, therefore, no part of such essential proof obtained here, it follows that the prima facie case made out by appellees remained unshaken.

Under its seventh assignment appellant complains of the $1,500 allowed by the court as reasonable attorney's fees as being excessive, but a recurrence to the record shows that, beyond merely objecting to the allowance at the time made, it neither by pleading proof, nor requested submission of the matter of attorney's fees under proper charge to the jury made any effort upon the trial to show either the unreasonableness of the amount, or the impropriety of allowing such fees at all; but, on the other hand, it does appear that the question of attorney's fees was not submitted to the jury, but by the acquiescence at least, if not by the positive agreement of appellant, in admitting that appellees were entitled to a judgment upon the policy, which by legitimate inference included all proper consequences thereof, was

determined by the court at the close of the trial, and upon uncontroverted pleading and undisputed proof as to the reasonableness of the amount awarded. Under these circumstances we do not think appellant is in any position to complain in this court, nor that we could properly say either that the amount was excessive, or that the trial court abused its discretion in awarding it. Vernon's Sayles' R. S. art. 4746; McCaulley v. Bank & Trust Co., 175 S. W. 728; Rushing v. Bank, 162 S. W. 470; Bank v. Robinson, 104 Tex. 166, 135 S. W. 372.

In the fifth assignment, the court's action in admitting the testimony of the expert witness, Dr. William Gammon, is vigorously assailed. The complaint is neither of the more usual objections to expert testimony, that the witness did not properly qualify as an expert, nor that the subject-matter was not susceptible of expert opinion, both of which were inferentially at least conceded, but the objection is that the doctor did not have sufficient information upon which to base his opinion. It is insisted that the necessarily harmful effect of admitting as evidence an opinion based on insufficient facts was reversible error. But what was the inquiry, and what were the facts and information upon which the complained of opinion was based? Dr. Gammon, an experienced surgeon, of wide experience with the effects of gunshot wounds, had examined the wound in Robert G. Shaw, this wound having been caused by a bullet fired from the identical gun from which the bullet was fired into McLarty, causing the wound under inquiry. He examined McLarty superficially a few minutes after McLarty was shot, and saw that McLarty was dead. The witness was read the following excerpt from the coroner's report, which report had been introduced in evidence by appellant:

"After examination I find the body of deceased to be that of George A. McLarty, secretary of the Galveston Maritime Exchange, and that the cause of death was two gunshot wounds, one near pit of stomach, just to the right of median line, the other just below the point of right shoulder, making also two exit wounds under right arm, said wounds inflicted with a Winchester 30-30 caliber rifle"

—after which the following question was asked:

"Q. (to Dr. Gammon): Now, you will please state what effect those wounds, as described, would have had, fired into a human body.'"

The witness then gave his opinion in answer to the question. We think the witness had sufficient knowledge of the facts upon which to base an expert opinion; the coroner's report was incorporated by reference into the hypothetical question asked witness, and this report gave a description of the wound asked about, showing its point of entrance and its point of exist, showing the caliber of bullet used, and the style of gun. These facts certainly describe to a physician the character of wound received. Dr. Gammon knew, further, that the shooting was done within the limits of the secretary's office of the Cotton Exchange; that McLarty had in fact died a few minutes after receiving the wound under inquiry, and he himself had also examined the wound in Shaw, effected by the same weapon. This evidence, it seems to us, meets all of the requirements of expert testimony. Shelton v. State, 34 Tex. 663; Thomas v. State, 40 Tex. 60; Pigg v. State, 43 Tex. 108; Railway Co. v. Abbott, 146 S. W. 1078; Railway Co. v. Webb, 178 S. W. 728; Railway Co. v. Harris, 172 S. W. 1131; Railway Co. v. Roemer, 173 S. W. 229; Pullman Co. v. Hoyle, 52 Tex. Civ. App. 534, 115 S. W. 315; Railway Co. v. Grenig, 142 S. W. 139; Henry v. State (Cr. App.) 49 S. W. 96; Railway Co. v. Parrish, 43 S. W. 536.

In our opinion no reversible error has been shown, all assignments are overruled, and the judgment is affirmed.

Affirmed.