[Civ. No. 5074. Third Appellate District.—November 5, 1934.]

ALICE HOUSH, Respondent, v. PACIFIC STATES LIFE INSURANCE COMPANY (a Corporation), Appellant.

J. F. Riley for Appellant.

Neumiller & Ditz, E. E. Breitenbucher and Charles H. Epperson for Respondent.

PULLEN, P. J.—This appeal is from a judgment in favor of plaintiff and involves the interpretation and construction of a policy of insurance. The facts are not in dispute and are briefly, that plaintiff was the mother of John D. Housh and the beneficiary under the policy of insurance here in controversy, wherein defendant agreed to pay to plaintiff a specified sum for the loss of life of John D. Housh resulting directly and independently of other causes from accidental injuries.

Housh and one Luke Abel together occupied a house near the outskirts of the city of Stockton. Abel was a cripple and although he could walk to some extent, usually got about by the use of wheel chair.

On the morning in question the sheriff's office was notified that there was something wrong at the house of Abel and Housh. A deputy sheriff immediately responded and upon entering the house found Housh lying in a pool of blood in the kitchen. He was suffering from a gunshot wound in the back of the head and died in a few hours from the effect thereof without regaining consciousness. Some distance away, but in the same room, Abel was lying dead on the floor. A double-barreled twelve-gauge shotgun was lying near Abel with both barrels discharged. Circumstances indicated that Abel had shot himself through the

heart. It was also apparent and not disputed, that Abel had shot Housh and then killed himself. Whether the shooting of Housh was accidental or deliberate on the part of Abel is one of the questions to be here determined and upon that must depend the outcome of this appeal.

The provisions of the policy of insurance applicable to this question is, after reciting that in consideration of the payment of premiums, the company insured Housh against—

"INSURING CLAUSE (A) Loss of Life, limb, sight or time, the cause of which originates and disability begins while this policy is in full force and effect, which loss results directly and independently of all other causes, from accidental bodily injuries, hereinafter called 'such injury,' . . .

"ACCIDENT INDEMNITY—SPECIFIC LOSSES Part 2. If the insured shall sustain accidental bodily injuries as described in the insuring clause, and 'such injury' shall independently and exclusively of disease and all other causes, immediately, continuously and wholly disable the Insured from the date of the occurrence of the accident and result in any of the following specific losses within ninety days thereafter, the Company will pay, in lieu of all other indemnity: For Loss of Life—The Principal Sum."

Under the heading "ADDITIONAL PROVISIONS" appears this clause: "This policy does not cover any loss resulting from . . . suicide, sane or insane, or any attempt thereat, or intentionally inflicted injuries."

It was the finding of the trial court that the death of Housh was caused by an accidental bodily injury inflicted upon him from a firearm discharged by another. Upon the trial, plaintiff introduced the policy of insurance and rested. Whereupon defendant moved for a nonsuit, the denial of which constitutes appellant's first ground for reversal. Without dwelling at length upon the merits of this point, we are of the opinion the allegations of the complaint and the admissions of the answer together with the presumptions applicable thereto established a *prima facie* case for plaintiff.

In the case of *Jenkin* v. *Pacific etc. Ins. Co.*, 131 Cal. 121 [63 Pac. 180], the insured was killed by a gunshot wound and the only evidence as to the cause of death was the position of the wound itself. In that case the court said:

"There is nothing perhaps, in the character or location of the wound to indicate from the mere inspection of it that it was inflicted accidentally rather than wilfully; but when we consider that it is contrary to the general conduct of sane men to take their own lives, and that all the presumptions are in favor of sanity and against crime, we are impelled to the conclusion that the insured must have received his injury as the result of an accident. In the absence of evidence to that effect, it will not be presumed that the insured purposely took his own life nor that he was murdered, and if he did not take his own life wilfully, and his life was not taken by another under circumstances making it a crime, then, we think, his death must be attributed to accidental causes. (*Richards* v. *Travelers' Ins. Co.,* 89 Cal. 170 [26 Pac. 762, 23 Am. St. Rep. 455].) That the courts will presume that the death was the result of an accident, when nothing more is shown than it was brought about by a violent injury, and the character of such injury is consistent with the theory of accident, seems to be a rule upheld by the great weight of authority." (Citing cases.)

In *Mah See* v. *North American etc. Co.,* 190 Cal. 421, [213 Pac. 42, 26 A. L. R. 123], the court also said:

"Of course, the burden was upon the plaintiff to prove by a preponderance of the evidence that the death resulted 'through accidental means', as provided in the body of the policy. But this burden was fully met when it was shown, without contradiction, that the shooting did not follow as a natural or probable result from anything done by the insured (*Richards* v. *Travelers' Ins. Co.,* 89 Cal. 170, 175 [23 Am. St. Rep. 455, 26 Pac. 762]; *Jenkin* v. *Pacific etc. Ins. Co.,* 131 Cal. 121 [63 Pac. 180]; *Price* v. *Occidental Life Ins. Co.,* 169 Cal. 800, 802 [147 Pac. 1175]). But on the issue raised by the claim of the defendant that the insured died as the result of ' "injuries intentionally inflicted" ' on him, the burden of proof rested upon the defendant. (*Postler* v. *Travelers' Ins. Co.,* 173 Cal. 1, 3 [158 Pac. 1022].)"

Appellant relies principally upon the cases of *Ogilvie* v. *Aetna Life Ins. Co.,* 189 Cal. 406 [209 Pac. 26, 26 A. L. R. 116], *Rock* v *Travelers' Ins. Co.,* 172 Cal. 462 [156 Pac. 1029, L. R. A. 1916E, 1196] , *Price* v. *Occidental Ins. Co.,*

169 Cal. 800 [147 Pac. 1175], and *Postler* v. *Travelers' Ins. Co.*, 173 Cal. 1 [158 Pac. 1022]. Examination of these cases shows that in the cases of *Ogilvie* v. *Aetna Life Ins. Co.* and *Rock* v. *Travelers' Ins. Co.* there was no external signs of injury, and therefore plaintiff, as a part of his case, would be required to establish the cause of death. In *Price* v. *Occidental Life Ins. Co.* no evidence was given, the appeal being on the judgment roll and the case is not an authority on the question here at issue. In *Postler* v. *Travelers' Ins. Co.* the death of the insured was brought about by an attempt by him to force a gambling house to pay money over at the point of a gun. In an encounter with one of those connected with the gambling house, an exchange of shots were fired resulting in the death of the insured. The court held the death of the insured was a natural consequence of his actions and was not an accident within the meaning of the policy. The burden was clearly upon the plaintiff under such circumstances to maintain the issue as to whether or not the death of the insured had been effected through accidental means.

As a further answer to appellant's argument as to the error of refusing its motion for a nonsuit, it cannot now be heard to complain inasmuch as the error, if any, in refusing the motion was waived by appellant proceeding to trial. (9 Cal. Jur. 564, and cases there cited.) In *Morgan* v. *McIntyre*, 113 Cal. App. 626 [299 Pac. 116], the court said:

"By presenting evidence after the denial of her motion, appellant changed the question for decision from the correctness of the ruling on her motion to the sufficiency of the whole evidence to support the judgment."

Another question raised by appellant is whether the following language in the policy refers to injuries inflicted by the insured or by another: "This policy does not cover any loss resulting from . . . suicide, sane or insane, or any attempt thereat *or intentionally inflicted injuries.*" (Italics ours.)

Was it the purpose to exclude from the benefits of the policy an injury or death intentionally inflicted by another? With the contention of appellant supporting the affirmative of this construction we cannot agree. This policy was a contract entered into between the company and the insured

and any acts or conduct therein prohibited would logically refer to the acts of the parties to the contract and in the case of ambiguity in a policy of insurance as has often been said, such uncertainty is resolved against the insurer. (14 Cal. Jur. 443.)

In *Button* v. *American Mutual Acc. Assn.*, 92 Wis. 83 [65 N. W. 861, 53 Am. St. Rep. 900], the insured was injured by the intentional discharge of a gun by a person unknown. The policy protected against death or injuries through external, violent and accidental means but contained an exception against intentional injuries. There the court, in considering this language, said:

" . . . But here the words are simply 'intentional injuries', and the question is, whose intention is referred to? We think it must be held that the word 'intentional', as here used, refers to the insured alone. The words, 'intentional injuries' are in close connection with a long list of injuries, all of which import more or less of intent, consent, or participation by the insured, and are evidently excluded because of such intent, consent, or participation; the idea evidently being that the risk should be one which the insured cannot, by intent or consent or by his own act, produce or hasten. Had it been the intention to exclude another class of injuries, namely, those inflicted intentionally by a third person only, it would have been easy to do so by a very few plain words. In the absence of such words, we construe the words under the familiar rule of 'noscitur a sociis'. The plaintiff was entitled to the judgment which he recovered. Judgment affirmed."

In the instant case the injuries sustained by the insured resulted in his death. In accordance with the rule of strict construction a line of well-considered cases hold that when a policy insures against intentional "injuries" a death resulting therefrom is not exempted. In *Kascoutas* v. *Federal Life Ins. Co.*, 193 Iowa, 343 [184 N. W. 125, 22 A. L. R. 294], it was held that where a policy insured against accidental death and disability with a provision that it did not cover a disability resulting from intentional injuries inflicted by insured or another, the company must pay where the insured was intentionally killed by a third person. In *Interstate Business Men's Acc. Assn.* v. *Dunn*, 178 Ky. 193 [198 S. W. 727, 6 A. L. R. 1333], the policy contained a

provision wherein the association agreed to pay the face of the policy in case of death of the insured from bodily injuries effected solely through external, violent and accidental means. There is also a clause excepting any loss due to the act of any person "done to injure the insured". The insured was intentionally murdered and in an action against the company to enforce payment the court held that the failure of the policy to use the word "death" in the excepting clause, rendered the company liable.

In *Provident Life & Acc. Ins. Co.* v. *Johnson*, (Tex. Civ. App.) 235 S. W. 650, the policy provided for insurance "from disability or fatal injury" and provided that if said "disability" resulted from the intentional act of the insured or any other person, the company would not be liable. The insured was killed by another and the company was held liable under the rule of strict construction, since "disability" and "fatal injury" have distinctly different meanings.

In *American Accident Co. of Louisville* v. *Carson*, 99 Ky. 441 [36 S. W. 169, 59 Am. St. Rep. 473, 34 L. R. A. 301], it was held that where a policy insures against death or injury by external, violent and accidental means, a provision that it shall not cover intentional "injuries" refers only to nonfatal injuries.

In *Business Men's Indemnity Assn.* v. *Washburn*, 94 Ind. App. 395 [157 N. E. 104, 158 N. E. 492], it was held that where in an accident insurance policy the exception clause referred to injuries intentionally inflicted, and did not contain the word "death", the court must assume that the word "death" was omitted for some good and sufficient reason. There also was a provision in that policy excepting liability as to injuries intentionally inflicted by insured or any other person; but nevertheless the beneficiary was entitled to recover for the death of insured resulting from being intentionally shot and injured by another, since such exemption clause dealt with injuries only, and it could not be said that exemption from death was intended thereby.

██ Under the facts in the instant case where all that appears is the death of the insured by a gunshot wound and the suicide of the companion, no evidence of a struggle or a quarrel appearing, the law relying upon a presumption of

innocence will hold death was accidental rather than the result of a criminal act.

Appellant calls our attention to presumptions other than that of innocence, namely: "That a person intends the ordinary consequence of his voluntary act" (sec. 1963, subd. 3, Code Civ. Proc.), and, "That an unlawful act was done with an unlawful intent" (sec. 1963, subd. 2, Code Civ. Proc.). He argues that in order for the gun to kill deceased it must have been pointed at him, the safety released, the hammer raised, the trigger pulled. All these acts, and particularly the discharge itself, could have been the result of an unavoidable accident in which no act or blame of Abel could be charged, in which case the presumptions referred to by appellant would not be applicable. The presumption of innocence still seems to be the only applicable presumption in which it is not necessary to assume some act of Abel.

From the foregoing it appears that the judgment of the court should be affirmed, and it is so ordered.

Thompson, J., and Plummer, J., concurred.