# Williams v. The State.

123    39
126    73

123    39
139    73

*Indictment for Robbery.*

1. *Evidence; testimony as to uncommunicated motive.*—Testimony concerning the uncommunicated motives or intentions of a witness is not admissible, except in rebuttal of contradictory statements to show why he made them, or where the defendant testifies in his own behalf to a particular act of his relative to the issue, when he may, on cross-examination, be asked, what motive prompted him to do the act.

2. *Same; robbery; admissibility of letter tending to connect defendant with the robbery.*—On a trial under an indictment for robbery, where the evidence tends to connect the two defendants with the commission of the crime and to show the defendants' flight after the robbery, and it is further shown that the amount taken from the person robbed was about fifteen dollars, a letter written by one of the defendants a few days after the commission of the robbery, from the place to which he and his co-defendant had fled, in which he stated that he and his co-defendant had "got hold of about $15," is competent evidence and admissible.

APPEAL from the Circuit Court of Perry.

Tried before the Hon. JOHN MOORE.

The appellants, Tom Williams and Robert Perry, were indicted, tried and convicted for robbery of one Walter C. Munden, and were sentenced to the penitentiary for twelve years.

On the trial of the case, Walter Munden, a witness for the State, testified that on the night of January 5th, 1899, he was robbed in Marion, Perry county; that he wanted to go to the house of one Patsy Nave and employed one Eugene Johnson to show him where the house was; that said Johnson went to the steps of the house and then left; that as witness knocked at the door, two men grabbed him, one by each arm, and demanded that he give them his money; that they immediately began to search his pockets, taking therefrom $13.25 in money and a pocket knife worth $1.10. This witness testified

that neither of the men who robbed him was Eugene Johnson.

Eugene Johnson, a witness for the State, testified that the defendants Tom Williams and Robert Perry were standing near the house of Patsy Nave when Munden went up the steps, and that as he, Johnson, left they rushed upon Munden and took hold of him, demanding his money. On cross-examination Johnson further testified that on his way with Munden to Patsy's house, he, Johnson, asked Munden to let him take him to his, Johnson's, girl's house instead of Patsy's. The defendants then asked the witness the following question: "Why did you offer to carry him to your girl's house after he had paid you to carry him to Patsy's house?" The State objected to this question, on the ground that it called for the reason or secret intentions of the witness, and further that it called for irrelevant and incompetent testimony. The court sustained the objection and the defendants duly excepted.

There was other evidence introduced for the State tending to show that the defendants were guilty of the robbery charged, and that after its commission they fled from Perry county.

Upon the examination of E. Y. Nelms, as a witness for the State, he testified that he was a deputy sheriff of Perry county, that after the commission of the robbery charged in this case, the defendants fled from Marion, and he was shortly thereafter notified that they were arrested at Hattiesburg, in Mississippi, and he went there for them. That the defendant Perry went under the assumed name of Dick and the defendant Williams assumed the name of Joe Johnson. This witness produced a letter purporting to be written by the defendant Williams, who was at Hattiesburg, Mississippi, which was dated Jan. 10, 1899, and he testified that said letter was handed to him by the chief of police in Hattiesburg, and that after he received it he had a conversation with Williams about it. That Williams told him he wrote the letter, but did it for fun. Thereupon the solicitor for the State offered to read said let-

ter to the jury as evidence against the defendant Williams. The defendant Williams objected to said letter being read in evidence, upon the ground that it was irrelevant, incompetent and impertinent to any issue in the cause. The court, after reading the letter, permitted the solicitor to read the following portions of it to the jury as evidence against the witness Williams: "We got hold of about fifteen dollars. Do not tell any one about us. My name is Joe Johnson. Back my letters in that name. Yours truly, Thomas Williams." The defendant Williams duly excepted to this ruling of the court.

The defendants by their evidence undertook to establish an *alibi*, by introducing testimony tending to show that about the time the robbery was alleged to have been committed they were about a mile from Marion. These facts present the only rulings of the trial court presented for review on the present appeal.

DeGraffenried & Evins, for appellant, cited *Campbell v. State*, 23 Ala. 76; *Linnehan v. State*, 120 Ala. 293.

Chas. G. Brown, Attorney-General for the State, cited *Linnehan v. State*, 120 Ala. 293.

McCLELLAN, C. J.—The general rule is well established in this State that a witness cannot testify to his uncommunicated motives or intentions. There is an exception to the rule to the effect that where a witness is sought to be impeached by showing by him on cross-examination that he has made contradictory statements, he may be asked in rebuttal why he made the statements in question.—*Johnson v. State*, 102 Ala. 1; *Campbell v. State*, 23 Ala. 44, 76. And where the accused testifies in his own behalf to a particular act of his relevant to the issues, he may on cross-examination be asked what motive prompted him to the act or what intention actuated him—why he did it.—*Linnehan v. State*, 120 Ala. 293. The question asked on cross-examination of the witness Johnson: "Why did you offer to carry him to your girl's house after he had paid you to carry him to Patsy's house?" is within the general rule and not within

either of the exceptions. Johnson was not one of the
defendants on trial, nor did this inquiry have relation
to any contradictory statements made by him: he in
fact had not testified at all about offering "to carry him
·[Munden] to" his girl's house. The court properly sus-
tained the solicitor's objection to the question.

· We are unable to say that the statement in the letter
written by the defendant Williams a few days after the
robbery, in which, money and property to about the
amount of $15, nearly all which was money, had been
taken, from a place to which he and his co-defendant
had fled from the scene of the robbery and where they
were under assumed names, that "We have got hold of
about $15" was either irrelevant, incompetent or imper-
tinent to the issues in the case against said Williams,
and we do not think the court erred in allowing the
·statement to go to the jury as evidence against that de-·
fendant.

Affirmed.