(85 South. 519)

### KINSEY v. STATE. (8 Div. 200.)

(Supreme Court of Alabama. April 8, 1920.)

**1. Criminal law ⬤⟷531(1) — Confession presumed involuntary.**

To be admitted against a defendant, a confession must be shown to be voluntary; confessions being prima facie involuntary.

**2. Criminal law ⬤⟷531(2)—Defendant's testimony that he was afraid of person who had instructed him to confess held admissible.**

In murder prosecution, where there was testimony that defendant had confessed, and where defendant, a 19 year old boy, himself testified that a 38 year old man, who had actually killed deceased, had threatened to kill defendant if defendant testified against him, and had instructed defendant to swear that he had killed deceased in self-defense, defendant's testimony that he was afraid of such man was admissible on issue of whether confessions were voluntary.

**3. Criminal law ⬤⟷736(2) — Whether confessions were voluntary held for jury.**

Where there was evidence that defendant, a boy 19 years of age, had been threatened with death by 38 year old man, who had committed the murder, if defendant told the truth about the murder, and that he had been instructed by such man to swear that he, the defendant, had killed deceased in self-defense, the question of whether defendant's confessions were voluntary was for the jury.

Appeal from Circuit Court, Lauderdale County; C. P. Almon, Judge.

Howard Kinsey was convicted of murder, and he appeals. Reversed and remanded.

---

The facts sufficiently appear from the opinion of the court.

Simpson & Simpson, of Florence, for appellant.

The court erred in sustaining the state's objection to the question to defendant. 147 Ala. 100, 41 South. 759; 170 Ala. 36, 54 South. 175; 1 Ala. App. 90, 56 South. 30. If the confessions were not admissible, the defendant was entitled to a directed verdict. 89 Ala. 134, 8 South. 104; 67 Ala. 55, 42 Am. Rep. 95; 76 Ala. 279; 68 Ala. 256; 59 Ala. 104; 40 Ala. 648.

J. Q. Smith, Atty. Gen., for the State.
No brief reached the reporter.

McCLELLAN, J. On January 1, 1919, Ed Gentry's lifeless body was found in a field, near a public road, two miles out of Florence. He had been shot both through the head and the heart. Kinsey, the appellant, and Lester Staggs were arrested for his murder. On Staggs' trial he was convicted; and on appellant's trial a few days later he was adjudged guilty of murder in the second degree and given sentence of 24 years. That Staggs and appellant went with Gentry to the neighborhood of the crime, for the purpose of getting whisky, was satisfactorily established by the evidence. The prosecution offered testimony in recital of statements, incriminatory in nature, made by the appellant. They are characterized in the record as confessions, and, in a sense, some of them might be so regarded. The former sheriff, Romine, testified that appellant, after arrest, made two or three statements to him or in his presence; and that, in substance, these statements were voluntary, no threats, or other invalidating acts or words being applied by any one to induce appellant to make these statements. On his examination in chief appellant testified as follows:

"When we got near the street where there was a little stand, Staggs stepped behind Gentry, and we went to the Huntsville road to get the whisky. Staggs said, 'You stay here until we get the whisky.' I thought I won't go; Staggs might accuse me of stealing his whisky. When Staggs and Gentry got about 50 yards from the road, two shots fired. I went down to see what they were shooting, and I met Staggs about halfway down from where the body was, and Staggs said: 'Come on Kinsey. I have got the money. Come on.' I would not do it and went on down where Gentry was. When I got down there I placed my face on his breast, and he was dead. I looked at Gentry's face, and it was bloody. I got the umbrella and placed it over his face, and placed his hands beside him. Staggs said, 'Come on,' and grabbed me and shook me and said, 'Are you going to tell this?' He said 'If I knew you would, I would blow your damn brains out right now.' I said, 'I ain't going to tell it,' and I said, 'If I had known this was what you were coming for I would not have come.' He said for us not to go in the market together. I waited until he went in, and then I went in. He closed the market, and we went down together, and Percy Staggs went with us. After he left and after Burn Hendon passed Staggs said, 'Kinsey, they are going to arrest us on suspicion,' and I said, 'I ain't going to swear to nothing.' He said 'You will have to swear to something.' He said: 'You swear you killed him in self-defense, and I will pay your lawyer's fee, and it will not cost you a penny.' He said, 'You could make your defense because you both go to see the same girl.' No, sir; I never had the watch offered as evidence in my possession. I never had my hands on it. I did not give that watch to Staggs, and told him to keep it."

Immediately succeeding this testimony this question was propounded by counsel, "Were you afraid of Staggs?" The court sustained the prosecution's objection to the question, but no ground of objection was stated. Some of the statements attributed to appellant by the witness Romine and admitted by the appellant to have been made by him to that witness, if not others, consisted with what the appellant testified Staggs told him to say (quoted above) in explanation of the cause and circumstances of Gentry's death. It was decided in Johnson v. State, 102 Ala. 20, 21, 16 South. 99 (in response to rehearing) that an exception to the general rule that a witness may not testify to his uncommunicated motives and intention exists where the witness admits that he made a statement attributed by others to him. This exception comprehends the right of even a witness to explain "the nature, circumstances, meaning and design" of what he said, and "he may be asked the motive by which he was induced to use such expressions." This doctrine of Johnson v. State was accepted and applied in Lowman v. State, 167 Ala. 57, 52 South. 638; Williams v. State, 123 Ala. 39, 26 South. 521; Postal Co. v. Hulsey, 115 Ala. 193, 207, 22 South. 854; Henry v. State, 107 Ala. 22, 26, 19 South. 23; Anderson v. State, 104 Ala. 83, 86, 87, 16 South. 108. In the last cited case it was held—notwithstanding the form of the question—that a witness might testify in explanation of discrepancies between her present testimony and that given on a former hearing of a bastardy proceeding that she, the witness, was "scared and embarrassed before the justice of the peace"; the ruling being referred for authority to Johnson v. State, supra. It appears from the consideration accorded by this court to the doctrine of the Johnson Case and its application to concrete cases that the exception's effect is not restricted to instances where cross-examination of the witness has elicited the subject for the application of the rule of the Johnson Case. Its design is to give the jury, as well as the witness, the benefit of whatever circumstance

or explanation, including the reason and motive of the witness, there may be that will shed light on the verity of the subject of the witness' explanation of the statement attributed to him and admitted by him to have been made.

[1-3] The applicability of this exception to the general rule to the status presented by the testimony of this defendant's "confessions" and his testimony detailing what Staggs said to him soon after Gentry was killed is clear. "Confessions" are prima facie involuntary. Redd v. State, 69 Ala. 255. To be admitted against a defendant, a confession must be shown to be voluntary. Staggs was a man 38 years old; appellant was a boy 19 years of age. If Staggs, on the night of the killing, expressed to appellant the menacing purpose appellant testified he did, his fear of Staggs, if such he entertained, was an important circumstance that should have been given the jury for their consideration in deciding whether his alleged "confessions" were voluntary; whether the incriminatory statements attributed to him were induced by fear of Staggs. Its effect and probative force were for the jury to decide. His fear of Staggs was open to proof by defendant's own recital of the state of his mind. If, as held in Anderson v. State, supra, a witness may properly testify that she was "scared" when she testified on a former occasion, in explanation of discrepancies in her testimony then being given, certainly a defendant, when confronted with "confessions" or incriminatory statements, may testify that those statements were induced by fear of another, or, as here sought by the question to be shown, that he was afraid of another to whose exoneration or acquittal of the crime the asserted statements would tend to contribute. If from the whole evidence, including the presence (if so) in defendant's mind of fear of Staggs, the jury should find that the "confessions" or incriminatory statements made by defendant were not voluntary in the legal sense, such matters should be laid out of view by the jury in determining guilt, this court having ruled in Redd's Case, supra, that an influence, the consequence of "fear or hope," once shown to exist as a motive inducing a confession, may be inferred to continue "in the absence of evidence to the contrary showing that the original influence had ceased or been dispelled" before or at the time the confession relied upon was made. Unless averted by the matter to be now mentioned, the action of the court in sustaining the objection (without assigning any grounds) to the question quoted was prejudicial error—this notwithstanding the question was probably faulty, on aptly grounded objection, in respect of its omission to specifically refer the inquiry to a time or period prior to the occasion when the "confessions" or incriminatory statements were made, and after the crime was committed. The matter supposed to conclude the inquiry whether the "confessions" or incriminatory statements were voluntary on the part of the defendant is thus recited in the bill of exceptions (on cross-examination of defendant):

"About that time the officers came down and arrested me, and said they were arresting me for the murder of Ed Gentry. They asked me what I did with the pistol I shot Ed Gentry with. I told them I did not have any, and did not shoot him. Staggs was not along with them. I did not tell them anything about it. They put Staggs and myself in jail. At that time I told them I did not know anything about it.

"Q. Was that true? A. No, sir. I sent for Mr. Romine to come up to the jail. I voluntarily sent for him, and told him I killed in self-defense, and told him everything Staggs told, me to tell him. I told him I killed him by myself, and I threw the pistol away that I shot him with. The day before I told them I had no pistol. I did not tell him about Staggs agreeing to pay my law fee. I told no one except Mr. Simpson, my lawyer. Of course he is not paying my law fee. Yes; I did kneel down by him and listen to see if he was alive. At this time Staggs was saying, 'Come on.' Yes; I was the one that had on boots. I do not know what kind of shoes Staggs had on. No; I did not get his watch. I know the watch you showed me is the watch Gentry used to carry. No; I did not get any of the money, and I did not take his watch. I do not know whose track that was under his leg. No, sir; I did not take his money. I was not there when it was taken. The first man I told about the killing was Mr. Romine."

While the defendant did state, as appears, that he "voluntarily" sent for Mr. Romine, it does not appear that the statements then made to Romine were voluntary. Indeed, when considered in connection with the above-quoted testimony of defendant, it affirmatively appears that, according to the defendant's testimony, he was retailing to the sheriff what he theretofore had testified Staggs told him to say. The record does not justify, in any degree, the conclusion that defendant admitted that his stated "confession" to Romine was voluntary. The error indicated was not cured.

Under the whole evidence, the guilt vel non of this defendant was for the jury. The judgment is reversed, and the cause is remanded.

Reversed and remanded.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.