(136 So. 870)

## GUNN v. STATE.

### 7 Div. 739.

Court of Appeals of Alabama.

Aug. 4, 1931.

Rehearing Denied Oct. 6, 1931.

L. H. Ellis, of Columbiana, and Marion H. Sims, of Talladega, for appellant.

Thos. E. Knight, Jr., Atty. Gen., and Thos. S. Lawson, Asst. Atty. Gen., for the State.

SAMFORD, J.

The defendant was indicted on a charge of murder in the first degree, in that she killed her husband, Wm. Gunn, by shooting him with a pistol. The evidence tended to prove that, while the defendant and her husband, Wm. Gunn, were riding in a closed car, about 8 o'clock at night, on the road leading from their house to Oxford, Ala., and at a point within a short distance of a certain bridge, the deceased was shot one time with a 32-20 Smith & Wesson pistol, the shot being at close range, entering the left breast about

two inches above the nipple, ranging slightly downward through the body, coming out under the right shoulder blade, and burying itself in the back of the front seat, from which it was extracted.

■ There was evidence tending to prove that she had in her possession at the time of the killing a 32-20 Smith and Wesson pistol, which shortly prior thereto had been loaned to her by one Jack Persons, a police officer of Sylacauga; that this pistol with fresh blood on it was found on the side of the road near where the defendant claims deceased was shot; that it had been recently fired one time, and it was found that the bullet extracted from the back of the seat where deceased was sitting fitted the exploded shell in the defendant's pistol. There was evidence tending to prove that deceased, while industrious, was a man with small income, working as a laborer at $2.50 per day, the aggregate per month being about $50, and that in addition he and his wife ran a small country store and filling station from which the gross sales amounted to about $300 a month; that in July, 1928, deceased insured his life with the Woodmen of the World (in which he already had a policy for $1,000) for $10,000. In October, 1928, he took out a policy in the Metropolitan Life Insurance Company for $5,000, and in March, 1929, one for $5,000. All of these policies were in force at the time deceased was killed and defendant and her daughter were named as beneficiaries. The aggregate premiums on these policies were $752 per annum and were paid by the defendant out of the joint funds of herself and husband, by checks which she gave on the bank. There was testimony by defendant tending to explain all of the foregoing facts consistent with the defendant's innocence, the defendant claiming and testifying in her own behalf that as she and her husband were traveling along the road they were held up and robbed, and that in the robbery one of the robbers reached across her as she was sitting at the driver's wheel and shot her husband. On the other hand, there were facts and circumstances tending to impeach the explanation, as also the general character of defendant. These were all questions for the jury, submitted to them in an able charge by the court, fully and fairly stating the issues upon every question presented and giving to the defendant every right to which she was entitled under the law. While the evidence was circumstantial and should be weighed with care, we cannot say that the evidence is so weak and inconclusive as to warrant us in holding that the trial court erred in refusing to grant defendant's motion for a new trial.

The appellant files brief in which insistences of error are made as to certain rulings of the court, but with no citation of authority, counsel contenting themselves with saying that: "Neither argument nor citation of authority is necessary." That character of brief is of very little, if any, benefit to the court. If such authority exists it should be cited, and if it cannot be found argument should be made based upon such logic as counsel have at their command. Left to our own resources in regard to the exceptions, we proceed to pass upon them as the Statute requires.

■■ Mr. Usrey, who was the undertaker who embalmed the body of deceased, was asked: "What does embalming disclose in regard to running fluid through a person?" To which he answered: "When the heart is destroyed in any body the circulation is broken, therefore, in that you had to raise an artery to go up above the heart and embalm the head to go down below and embalm each limb separately." The defendant then stated he embalmed the body of deceased in this manner.

Usrey had testified that he was a licensed embalmer, which qualified him under section 693 of the Code of 1923 to testify as to the arterial system. Just what the testimony adduced added to the inquiry we are unable to see, but surely it could not have injuriously affected the substantial rights of the defendant. The location of the wound was not in dispute, nor the cause of death; but the testimony tended to disclose the character of the wound and as such was admissible.

■■ A proper predicate having been laid, the state was allowed to prove by the witness Abrams that he had a conversation with defendant at the jail, at which time Mrs. Gunn came to the window, and I said: "How far from the bridge did Mr. Gunn get killed, I've heard so many things I would like to know and she said he didn't get killed nowhere about the bridge, he got killed back down towards Sycamore. My lawyer told me not to talk so much, but I will tell you all this much." That part of the foregoing, which is a statement by the defendant, is admissible as an inculpatory statement, and what was said to the witness by the defendant was admissible as an inducement to the statement and as a part thereof.

■ The question propounded to defendant's witness Henderson: "Then state whether or not in your judgment from what you saw, their married life was happy and contented as between the two or otherwise?" This question called for a conclusion of the witness, not based upon sufficient knowledge. The witness could and did testify to facts tending to prove the kindly relationship between defendant and her husband, but the times which witness saw them together were few and casual and of not so intimate a relation to place him in position to testify to conclusions.

496

■ The defendant having testified that she did not have the insurance policies buried and did not tell her daughter where to find them, it was admissible to prove as a contradiction that she said to the witness Wesley, "The insurance policies were buried," and, "She told her daughter where they were at."

We find no error in the record, and the judgment is affirmed.

Affirmed.