250 So.2d 579

**AETNA LIFE INSURANCE COMPANY, a Corp.**

v.

**Estelle P. DOWDLE.**

**7 Div. 780.**

Supreme Court of Alabama.

Feb. 4, 1971.

Rehearing Denied March 4, 1971.

---

London, Yancey, Clark & Allen, and Thomas R. Elliott, Jr., Birmingham, for appellant.

Dortch, Allen, Wright & Wright, and Roy D. McCord, Gadsden, for appellee.

COLEMAN, Justice.

The defendant appeals from a judgment for plaintiff in an action on a policy of insurance on the life of Eddie B. Dowdle who died as the result of a gunshot wound.

Plaintiff is the beneficiary under the policy. The complaint contains one count wherein plaintiff claims of defendant $9,000.00 due on the policy whereby defendant insured the life of Eddie B. Dowdle and agreed to pay to plaintiff said sum upon proof that death of the insured had occurred in consequence of bodily injuries effected solely through external, violent, and accidental means. Plaintiff alleges that the insured did die on a certain day in consequence of bodily injuries effected solely through external, violent, and accidental means by being shot with a shotgun, and from which bodily injuries death was the direct result independent of all other causes. Plaintiff acknowledges that defendant is entitled to credit for $4,500.00 paid by defendant on plaintiff's $9,000.00 demand.

Defendant pleaded the general issue in short by consent with leave, etc.

On the trial by a jury, the parties stipulated that the policy was in force and effect at the time of insured's death, that plaintiff is the beneficiary under the policy, and that insured came to his death as the result of " . . . . a gunshot wound fired by Lonnie Bagley."

Plaintiff introduced the policy into evidence and rested her case.

Defendant called Lonnie Bagley as a witness and he testified as to the circumstances of the shooting as hereinafter mentioned. Bagley was the only eyewitness who testified.

Defendant's requested affirmative charge with hypothesis was refused. The jury returned a verdict for plaintiff for $4,500.00, and judgment was entered accordingly. Defendant filed motion for new trial which was overruled. The motion contained the ground that the verdict is not sustained by the great preponderance of the evidence.

Defendant assigns for error the refusal of its requested affirmative charge with hypothesis and the overruling of defendant's motion for new trial. Defendant assigns also the action of the court in sustaining plaintiff's objection to certain evidence which defendant sought to introduce.

1.

Defendant says the assignments of error raise two points, the first point being:

"1. That the evidence in this case was insufficient as a matter of law to support the verdict of the jury."

Defendant's contention is that the injury, which caused insured's death, was not effected by means that were accidental as the word, accidental, is used and understood in policies insuring against death resulting from bodily injury effected by external, violent, and accidental means. Stated differently, defendant's contention is that the evidence in the case will not support a finding that insured's death was effected by accidental means because he brought about his own death by volun-

tarily provoking or entering into an affray with Lonnie Bagley.

"The rule is that when insured is the aggressor, especially with a deadly weapon, and makes such an attack on another as would naturally invite a deadly encounter in resistance of his attack, and as the probable consequence of it, and he is killed by the other while so resisting him, it cannot be regarded as an accidental death, since he voluntarily put his life at stake and deliberately took the chances of getting killed. (Citations Omitted)" O'Bar v. Southern Life & Health Ins. Co., 232 Ala. 459, 462, 168 So. 580, 582, ¶ [9].

Bagley testified, in substance, that on the morning of the killing, he and insured met by chance at a cafe; that insured was about six feet tall and weighed 190 to 200 pounds; that the witness Bagley is five feet eight inches tall and weighs 155 pounds; that they had a conversation and one of them proposed that they have a "little skin game" which is played with cards; that they went to Mandy Patton's room or apartment which was upstairs next door to the cafe; this was between eight and nine a. m. They played for a while until some one came by for insured and he left. They had had no argument or difficulty at that time. They met again around eleven-thirty a. m. "and took it up again."

Bagley testified further that insured said he was ready as they went back to Mandy Patton's place and they resumed the game. The testimony indicates that both insured and Bagley had been drinking that morning but not in the presence of each other.

In the course of play, Bagley won a bet but insured would not give Bagley the money. Bagley says insured was wrong, but insured said he was not going to give Bagley the money and Bagley said he was going to have his money. Insured said " '. . . . you get it the best way you can.' " and Bagley said, " 'Okay, I will see you later.' "

Bagley went home and got his double-barrel shotgun which he loaded and put in his car and went back to Mandy's. When he got back to Mandy's insured had not come back, and Bagley got in his car and pulled off. When Bagley ". . . . went around the loop . . . .," and saw insured ". . . . coming up through the path," Bagley stopped the car and got out. Bagley "hollered" at insured and told him that he, Bagley, wanted his money. Insured kept walking and Bagley "asked" insured to stop. Bagley had taken his shotgun out of the car and was carrying it. Insured had his hand in his pocket. He just kept walking toward Bagley. Bagley said: " 'I told you not to keep coming up on me.' " Bagley started backing up. He could not tell what insured had in his pocket. All Bagley could see was ". . . . it looked like he had a point stuck out . . . ."

Insured kept walking. When he ". . . . got so close on . . . . ." Bagley, Bagley whirled the gun around and shot. He just shot trying to scare insured and to make him stop. The distance between them at that time is not exactly reflected in the testimony but appears to have been a distance not greater than the dimensions of the courtroom. The shot did not hit anything that Bagley knows of but apparently some of the shot hit the porch of a nearby house.

After Bagley fired, the insured made a rush into Bagley and they fell into some weeds where they struggled. The insured had a knife in his hands. When Bagley fell, the shotgun fell beside him. Insured was reaching at the gun and trying to cut Bagley. Insured scratched Bagley three times with the knife. It barely broke the skin. Insured was on top of Bagley. Bagley managed to get the gun in between them and pulled the trigger. The shot struck insured in the neck and apparently he died immediately.

On cross-examination, Bagley testified that, when insured left and put the money in his pocket, Bagley told insured that he,

Bagley, was going to get his money, and that Bagley was angry. When insured left Mandy's, Bagley went home and got his gun loaded. He was still angry. He got in his brother's car and drove back to Mandy's place where he stopped and asked if the insured was there. Somebody told Bagley that insured was not there.

Bagley drove off. He was already headed in the direction of insured's house. Bagley testified that he was not going to insured's house but " . . . . was going up that road and circle around that circle and go back down to the house." Bagley said he was driving down a certain street, and " . . . . on the next street over here Eddie B. (insured) lived." (Par. Added) Bagley knew that a certain "trail" led from a street (apparently the street on which Bagley was driving) over to the street where insured lived. The record indicates that the witness was being examined with reference to a diagram, perhaps on a blackboard, which is not in the record. The testimony apparently is that Bagley saw insured approaching on this "trail" or path, that Bagley stopped his car at a place where he could not see insured from the driver's seat, that insured could see the tail of the car Bagley had been driving, that Bagley did not completely conceal the car from insured, and that Bagley got out of the car and took the loaded shotgun with him.

Bagley went around a house where he could see insured coming up the path. Bagley had his gun in his hand. He told insured that he, Bagley, wanted his money. The gun was not pointed at insured, " . . . . but it was in his direction." Bagley did not tell insured that Bagley was going to shoot insured. When Bagley left home with the loaded shotgun, he was angry, was looking for insured, and was after his money.

·Defendant relies on a rule stated. in *O'Bar* as follows:

"To constitute an accidental death, it must have resulted from something un-

foreseen, unexpected, and unusual. Carroll v. Fidelity, etc., Co., supra [C.C., 137 F. 1012], or 'which happens as by chance, or which does not take place according to the usual course of things,' or 'without foresight or expectation' or 'by reason of some violence, casualty, or vis major to the assured, without his design or consent or voluntary cooperation.' Equitable Accident Ins. Co. v. Osborn, 90 Ala. 201, 206, 9 So. 869, 870, 13 L.R.A. 267." (232 Ala. at 462, ¶ [10], 168 So. at 582.

Defendant says:

"The insured from the commencement of the difficulty which arose at the gaming table, chose the course which was calculated to produce the affray . . . which later developed. He was not an innocent bystander suddenly thrown into a situation in which he had to make a split-second decision to run or defend his life.

. . . . . . . . . . .

" . . . . The insured would not in any sense of the word be free from fault in provoking . . . . the altercation. In fact he had intentionally provoked the same by instructing Lonnie Bagley that he would have to get his money, 'the best way you can.' . . . ."

The evidence may well have supported a finding that insured was the aggressor or that he voluntarily put his life at stake and deliberately took the chance of getting killed. On the other hand, the jury could find that Bagley went to his home, armed himself with a shotgun, and set out in pursuit of insured to recover the money or kill him; that at the last meeting, the insured was walking along a path leading from the direction of his home, that he was suddenly and unexpectedly confronted at close range by Bagley who was armed with a shotgun, was angry, and was demanding the money; and that when Bagley fired the gun which had been pointed in the direction of insured, the insured was justified in grappling with Bagley in an effort to defend insured's life.

In Aetna Life Insurance Company v. Beasley, 272 Ala. 153, 157, 130 So.2d 178, 181, this court quoted the following statement from Mutual Life Insurance Company of New York v. Sargent, 5 Cir., 51 F.2d 4, 5, to wit:

"'. . . . In each case if there is any issue of fact as to how the matter occurred, and as to what ought to have reasonably been expected as likely to ensue, the matter is for the jury. . . . .'"

We do not think that the evidence in the case at bar compels the inference as a matter of law that insured provoked the affray in which he was shot, or that the affray occurred by reason of the voluntary cooperation of insured. The following cases cited by defendant, as they appear to us, are distinguishable.

In O'Bar:

". . . . All the evidence . . . . was without conflict. It was that insured made a deadly attack on one Magwood at the latter's home, without provocation, when he shot at Magwood with a pistol, and when it failed to fire again he beat him with it, knocking him down and kicking and beating him in a most savage and ferocious manner, threatening to kill him, while Magwood was pleading with him not to do it, and finally while insured was down on him, Magwood, who had only one arm, pulled his knife, opened it, and cut insured in the chest, from which wound he died later." (232 Ala. at 461, 462, ¶ [8], 168 So. at 582)

In the instant case, the fight was not at Bagley's home, and Bagley had fired a shotgun in the direction of insured before he grappled with Bagley. When Bagley had pursued insured and fired the gun in the direction of insured at close range, the trier of fact, in reason, can hardly be compelled to find that insured's subsequent and immediate attack on Bagley was "without provocation."

In Travelers' Ins. Co. v. Dupree, 17 Ala. App. 131, 82 So. 579, in action on an accident policy, the court reversed a judgment for plaintiff because he did not elect to come under an elective benefit provided in the policy and did not show facts authorizing recovery for total or partial loss of time. With respect to defendant's contention that plaintiff, the insured, was the aggressor the court said:

". . . . The evidence in this case discloses the fact that the assault of Harper on plaintiff was entirely unprovoked and unwarranted, and the jury was warranted in finding that the plaintiff acted entirely in self-defense in an assault then and there being made upon him." (17 Ala.App. at 132, 82 So. at 580.)

Dupree lends little support to defendant's insistence. Dupree could be argued as supporting the proposition that the insured may recover as for accidental injury when he is injured in a fight in which he struck the first blow, provided he was acting to defend himself from an unprovoked assault.

In Prudential Cas. Co. v. Curry, 10 Ala. App. 642, 65 So. 852, the court reversed a judgment for plaintiff in action on an accident policy. The agreed facts were that one Teague was traveling on the road in front of insured's home, that Teague was carrying a rifle in plain view, that insured procured a rifle from his home, and, as Teague was passing insured's house, insured presented his rifle, cocked and ready to shoot, at Teague and insured asked Teague "'what in hell he had to do with some women, or words of like character and meaning.'" Whereupon Teague shot and killed insured. The actions of insured in Curry and the action of insured in the case at bar are widely different. In Curry, the insured accosted his slayer and presented a rifle at him. In the case at bar, evidence supports a finding that the slayer accosted the insured and fired a gun in the direction of insured even if not directly toward him.

We are of opinion that defendant's requested affirmative charge with hypothesis was refused without error and that the court did not err in overruling the motion for new trial on the ground that the verdict was not sustained by the great preponderance of the evidence.

## 2.

The second proposition argued by defendant is that the court erred in sustaining objection to defendant's attempt to prove the circumstances under which defendant's witness, Bagley, had plead guilty to second degree manslaughter for killing the insured.

On cross-examination, plaintiff's counsel examined Bagley as follows:

"Q Well, did you plea (sic) guilty to second degree manslaughter for killing Eddie B. Dowdle?

"A I did.

"Q And was sentenced, I believe, to twelve months in the county jail?

"A That's right."

On redirect, defendant's counsel asked Bagley the following question:

"Q Lonnie, what were the circumstances of this plea of guilty you gave to second degree manslaughter?"

Plaintiff objected and the court sustained the objection.[1] Court recessed and the court and counsel conferred on the matter outside the presence of the jury.

During this conference, counsel for defendant stated to the court that defendant offered to show that Bagley had been indicted for first degree manslaughter and entered the plea of guilty to second degree, manslaughter in reliance on the agreement between Bagley, his counsel, and the solicitor that if Bagley pleaded guilty to second degree manslaughter he would be put on probation.

During the conference, the following colloquy was had by defendant's counsel and the court:

"MR. SIMMONS: Do we need to establish what he would testify?

"THE COURT: I don't think so, you have got your question and you have got your exception in and the ruling. I think that is sufficient.

"MR. SIMMONS: And the Court tells us not to go into any agreement as to why he plead guilty?

"THE COURT: Yes.

"MR. SIMMONS: All right, sir."

The foregoing is set out to show that the court and counsel understood that defendant was offering to show that Bagley plead guilty to second decree manslaughter in reliance on the agreement already mentioned.

The ruling of the court here assigned for error is that defendant was not permitted to show that Bagley plead guilty in reliance on the agreement that he would be put on probation. The court did allow defendant, on further redirect, to show that Bagley had been indicted for first degree manslaughter, that he got a sentence of one year, and that he was put on probation.[2]

---

1. The trial court seems to have placed the ruling in part on the ground that the question called for testimony showing an undisclosed mental operation. The record recites:

"THE COURT: Calls for a mental operation, too, I will sustain the objection."

For exception to rule against direct testimony as to mental status see Turner v. State, quoted hereinafter in opinion.

2. Redirect examination of Bagley by defendant shows the following:

"Q Lonnie, before we took this recess, Mr. Wright had asked you about your pleading guilty in a case to second degree manslaughter. What were you charged with? What had you been indicted for?

"MR. CHARLES WRIGHT: We would object to that, your Honor. No, we withdraw our objection.

"Q What had you been indicted for?

On direct examination, defendant's witness, Bagley, had testified that he was carrying a shotgun in plain view of insured, that the witness repeatedly called out and told the insured not to come up on the witness, that insured ignored these warnings and kept coming toward witness and finally rushed upon him and engaged in the struggle in which insured was killed. This testimony given by the witness, as already stated, tends to support an inference favorable to defendant that the insured was the aggressor and must have reasonably anticipated that he might be killed in the struggle, that he voluntarily took the chance of getting himself killed, and that his death cannot be said to have resulted from accidental means when he was the aggressor or voluntarily cooperated in the affray which culminated in his death.

On cross-examination, plaintiff elicited from the witness testimony that he had plead guilty to second degree manslaughter for killing insured. The guilty plea by the witness is a prior statement by the witness which contradicts and is inconsistent with his testimony on direct examination which tends to show that insured was the aggressor or fought willingly.

"If a witness admits on cross-examination that he has previously made a statement contradictory of his present testimony, he may testify on redirect examination as to why he made the previous inconsistent statement:" McElroy, Law of Evidence in Alabama, 2nd Ed., Vol. 1, page 381.

"The general rule is well settled that 'mental status is not the subject of direct testimony by the witness, but can only be shown as a matter of inference to be determined from the circumstances, and other relevant facts in the case. (Citations Omitted)' (Citation Omitted)

" . . . . When a witness has admitted on cross-examination the use of

certain expressions tending to discredit his testimony, he may on redirect examination in response to questions state what induced him to make such expressions, although it is but an uncommunicated motive. Johnson v. State, 102 Ala. 1, 16 So. 99; Anderson v. State, 104 Ala. 83, 16 So. 108; Campbell v. State, 23 Ala. [44] 76; Kinsey v. State, 204 Ala. 180, 85 So. 519; Williams v. State, 123 Ala. 39, 26 So. 521.

"The principle has been applied to the motive for acts and conduct of the witness brought out on cross-examination which tended to impeach the credit of his testimony, as well as his motive for making discrediting statements. They all are controlled by the same principle. Lowman v. State, 167 Ala. 57, 52 So. 538; Henry v. State, 107 Ala. 22, 19 So. 23." Turner v. State, 224 Ala. 345, 346, 140 So. 448.

"It is a well established rule of law, that where a witness has been cross-examined respecting his former statements with a view of impairing his credit, the counsel who called him has the right to re-examine him, so as to afford him an opportunity of explaining such statements, (2 Russell on Cr. 937;) and it is also said by the same authority, that he may be asked what induced him to give to the person or persons to whom he made the communication the account which he has stated in the cross-examination.—*ib.* 937; 2 Brod. & Bing 297. . . . ." Campbell v. State, 23 Ala. 44, 76.

See also: Pollard v. Rogers, 234 Ala. 92, 173 So. 881, ¶ [20–23].

Under the rule which allows explanation of the circumstances under which the inconsistent statement was made, and the witness' motive in making it, the defendant was entitled to show by the witness that

"A First degree manslaughter.
"Q All right. What—what kind of sentence did you get?
"A One year.

"Q Were you put on probation?
"A Yes, I was."

he had made the plea of guilty in reliance on the agreement that the charge of first degree manslaughter would be reduced to second degree manslaughter and that the witness would be given probation. The witness is entitled to show his motive in making the prior inconsistent statement. Authorities supra.

Counsel for plaintiff recognized that Bagley's guilty plea possessed probative force to show that insured was not the aggressor. The record discloses that in argument to the jury counsel for plaintiff said:

"Now what they have attempted to do, they bring on one witness to attempt to show that our man was the aggressor. By whom do they show that, by Lonnie Bagley, the man who plead guilty to killing Eddie B. Dowdle. He admitted it."

Counsel for plaintiff argue that, "The discrediting of the witness by showing his conviction of a crime does not authorize the reception of evidence indicating his innocence of the charge or showing the particulars of the offense or showing that witness never paid fine or performed hard labor sentence imposed upon him and while the general rule is that the witness may testify to his mental operation in explaining acts or statements brought out by adverse party to discredit witness upon cross-examination, the rule does not apply if the witness is discredited by showing prior conviction of witness."

The rule that the witness cannot on redirect show his innocence or explain his prior conviction has been applied when the crime for which he was convicted was a crime committed in a transaction which was independent from the transaction which was the subject matter of the case being tried. Plaintiff cites the three cases next referred to.

In Mayo v. State, 32 Ala.App. 264, 24 So. 2d 769, defendant was on trial for assault with intent to ravish. He testified in his own behalf. It was shown that he had

been convicted under a federal statute for transporting an automobile across a state line. The Court of Appeals held that the trial court did not err in declining to let defendant state that he was given probation in the conviction for violating the federal statute. No connection whatever is shown between the transaction in the transportation case and the transaction in the assault case.

In Nelson v. State, 35 Ala.App. 179, 44 So.2d 802, defendant was convicted for assault with intent to rob. On cross-examination, the state elicited from defendant testimony that he had been convicted by court martial for desertion from the United States Navy in time of war. The Court of Appeals held that the trial court did not err in sustaining objection to questions seeking to show explanatory details of the offense for which he had been convicted by the court martial. The transactions in the assault case and the desertion case are clearly independent of each other.

In Lee v. State, 37 Ala.App. 321, 69 So.2d 467, defendant was on trial for transporting illegal liquor in violation of statute. An arresting officer testified that he saw defendant's hand over a pistol on the seat of defendant's automobile. Defendant testified that the pistol belonged to his wife and was pushed down between the seats and unreachable. On cross-examination defendant testified that he had plead guilty to a charge of carrying a concealed weapon growing out of his possession of the pistol on the night of his arrest. The Court of Appeals held that the trial court did not err in sustaining objection to a question on redirect asking defendant ". . . . if you didn't plead guilty just to get it settled?" The acts done by defendant in carrying a concealed weapon and in transporting the whiskey were clearly independent of each other. The fact that defendant was convicted for two separate offenses shows this. The act of carrying a concealed pistol would not be an element of the act of transporting illegal liquor.

Two reasons are usually given for holding that a witness, impeached on cross-examination by proof of his conviction for crime, cannot on redirect examination explain the circumstances of his conviction. 166 A.L.R. 220.

First, it is said that to allow such explanatory evidence would be to allow the contradiction or impeachment of a judicial record in a collateral proceeding, which would be against judicial policy. In the instant case, the judicial determination of Bagley's guilt has already been challenged or placed in issue in the instant case. As is hereinafter considered, the judicial determination of Bagley's guilt in the criminal case is not conclusive or res judicata of his guilt in the instant civil case. Whether Bagley is responsible for insured's death is a material issue of fact here being tried in the civil case.

Second, it is said that to allow the explanatory evidence as to the prior crime would divert the attention of the jury from the issue in the case presently being tried and inject collateral issues into the present case. The material facts being presented in the instant civil case are the identical facts which would be material in the criminal prosecution of Bagley. The transaction being investigated is identical in both cases. There is no investigation of a collateral transaction.

Neither of the two reasons given for the rule of exclusion exists in the instant situation. This court has had occasion to consider a situation which is closely alike to if not identical with the instant situation. See Sovereign Camp W. O. W. v. Gunn, infra.

None of the cases relied on by plaintiff, or of which we are advised, holds that the witness cannot explain the circumstances under which he plead guilty when the transaction in which he plead guilty is the same transaction which is the subject matter of a civil case which is presently being tried and in which the witness has been called to testify.

If the transaction for which Bagley had been convicted were an independent transaction and did not involve the same issues which were being tried in the case at bar, then, under our cases, Bagley would not, on redirect examination, be permitted to testify that he was innocent of the offense or to explain his conviction. In the instant case, however, the subject matter of the suit arises out of the identical transaction from which arose the crime to which Bagley had pleaded guilty. The issues of fact are substantially the same issues; i. e., whether Bagley was the guilty agent in causing insured's death or whether insured was the aggressor and voluntarily cooperated to bring about his own departure from this life. The parties and measure of proof are not the same.

The conviction of Bagley for killing insured was not, in the instant trial, res judicata of Bagley's guilt. Even if Bagley had been the beneficiary under the policy sued on, his prior conviction for killing insured would not be res judicata of his guilt, but the record of his conviction would have been at most clothed with a prima facie presumption of verity.

In Sovereign Camp W. O. W. v. Gunn, 224 Ala. 444, 140 So. 410, plaintiff was the assignee of the beneficiary named in a policy of insurance issued on the life of the beneficiary's husband by defendant. Defendant was an association. In plea 8, defendant alleged that under the laws of the association, the policy would become null and void if insured should die by the hands of the beneficiary, except by accident, and that the beneficiary had been convicted for unlawful killing of the insured and sentenced to twenty years in the penitentiary. With respect to the plea, this court said:

"Plea 8 was also subject to the demurrer interposed to it. It was but an attempt on the part of the defendant to set up, as an answer to the complaint, the indictment, trial, and conviction of the beneficiary—Mary M. Gunn, for the

murder of Willie C. Gunn, the insured—proceedings begun and had in the circuit court of another county, in which the only parties were the state of Alabama and the said Mary M. Gunn. It was an attempt to plead the conviction and sentence of Mrs. Gunn of the murder of her husband as res adjudicata of her guilt." (224 Ala. at 449, 140 So. at 413)

The judgment was reversed for error in overruling the motion for new trial. This court said:

". . . and, after allowing all reasonable presumptions in favor of the correctness of the jury's verdict, we are forced to the conclusion that it was contrary to the great weight of the evidence, and required that it be set aside on proper motion. . . . ." (224 Ala. at 450, 140 So. at 415)

On retrial in the circuit court judgment was for plaintiff and defendant again appealed. This court reversed on the second appeal for error in limiting the effect of the record of conviction to the question of the credibility of the beneficiary who was a witness in the case. The holding is fairly set out in the following excerpts from the opinion:

"Defendant introduced in evidence the record of the conviction of Mary M. Gunn for the murder of her husband, Willie C. Gunn, in the circuit court of Talladega county (affirmed on appeal, Gunn v. State, 24 Ala.App. 494, 136 So. 870).

"The trial court limited such evidence solely to the impeachment of Mary M. Gunn, as a witness in the case. By statute conviction for crime involving moral turpitude is admissible as going to one's credibility as a witness. Code, § 7722.

". . . . . . . . . . .

". . . . Technically res adjudicata cannot be applied to the case at bar as held on former appeal.

". . . . . . . . . . .

"What, then, is the probative effect of such record of conviction? . .

"The Virginia case held it conclusive of the fact that such crime was committed by the party convicted. Any other view was regarded as a collateral attack on such judgment by a party thereto.

"The New York and English courts, however, as well as many others reviewed in the Virginia case, declare such record 'prima facie' or 'presumptive' evidence of guilt when offered in the civil proceeding.

"Since another party to a civil suit, in no way bound by the results of the prosecution is offering such record, the other party should not be entirely concluded and shut off from showing there was a miscarriage of justice in the criminal case. Else a further wrong touching property rights may be perpetrated.

"Certainly, on a showing of perjury in the criminal case, or newly discovered trustworthy evidence, clearly proving the convicted person was in fact innocent, such conviction should not be binding in the civil suit.

"But, it must be borne in mind, that the record of conviction is a solemn judicial finding, and should be clothed with a prima facie presumption of verity. Upon the introduction of such record, the burden of proof shifts to plaintiff on that issue. .

"The evidence to overcome such prima facie showing is not to be limited to an attack on the judgment of conviction on grounds of fraud or perjury, but all evidence tending to prove the innocence of the beneficiary in fact is to be admitted, and weighed under proper instructions from the court.

"For the error in limiting the record of conviction as evidence to the question of credibility of the witness, the judgment is reversed." Sovereign Camp W.

O. W. v. Gunn, 227 Ala. 400, 401, 403, 150 So. 491, 492, 493.

See also: Fidelity-Phenix Fire Ins. Co. v. Murphy, 231 Ala. 680, 166 So. 604.

Bagley's plea of guilty in the instant case is no less subject to explanation than was the record of the beneficiary's conviction and sentence in the Gunn case, supra, where this court said: ". . . . all evidence tending to prove the innocence of the beneficiary in fact is to be admitted . . . ." Sovereign Camp W. O. W. v. Gunn, supra.

It appears appropriate to say at this point that we are not to be understood as holding that manslaughter in the second degree is a crime involving moral turpitude, or that the conviction of a witness for such crime may be shown to impeach him under Title 7, § 434, Code 1940, when the transaction out of which the crime arose is independent from the transaction out of which the case on trial arose.[3] That question is not presented. Whether the fact of Bagley's plea of guilty and conviction was admissible or not under the statute merely to show generally that he was unworthy of belief, the fact that he had pleaded guilty was admissible as a prior inconsistent statement to discredit the testimony he had given on direct examination.

The transaction out of which the instant case arose is the same transaction out of which Bagley's conviction and guilty plea arose. His plea of guilty is a statement inconsistent with the tendencies of his evidence which show that the insured was the aggressor. Defendant had a right to have the witness explain the circumstances under which he pleaded guilty and his motive for doing so. The weight and effect to be given his explanation is a matter within the province of the jury.

The court's ruling denied defendant that right. Testimony that the witness plead guilty to the killing and was given probation is not testimony that he plead guilty because of an agreement to give him probation. Proof that a witness has made a statement is not proof of why he made it. Defendant was entitled to have the witness say why. The jury had the duty to weigh his testimony but not the duty to search for an inference as to why he made the plea. The court ought not to have required the jury to speculate as to whether there was an agreement. The court carefully excluded from the jury any reference to an agreement and defendant was denied the right to argue that there was an agreement. From this record, the reasonable conclusion is that the existence of the agreement never occurred to the jury and they never considered its significance one way or the other. All possible benefit from testimony concerning the agreement was wholly lost to defendant.

In short, the plaintiff had elected to present to the jury evidence that the witness Bagley, by pleading guilty, had made a prior inconsistent statement which tended to discredit his testimony that insured had continued to advance on the witness and was the aggressor. Since plaintiff had introduced evidence showing part of the circumstances under which Bagley had made the inconsistent statement, the defendant was entitled to introduce evidence showing all the circumstances under which he had made the statement, including any agreement which would shed light on the reason he had made the statement.

For the ruling sustaining objection to evidence showing such explanation and motive, the judgment is reversed and the cause remanded.

Reversed and remanded.

HEFLIN, C. J., and LAWSON, SIMPSON and McCALL, JJ., concur.

3. McElroy, Law of Evidence in Alabama, 2nd Ed., Vol. 1, page 339: ". . . . It is believed that manslaughter in the second degree does not involve moral turpitude because it is an unintended killing."

MERRILL, HARWOOD, BLOOD-
WORTH and MADDOX, JJ., dissent.

MERRILL, Justice (dissenting):

I would affirm the judgment of the trial court. I, therefore, respectfully dissent.

HARWOOD, Justice (dissenting):

I concur in the conclusion that no error should be cast upon the court below because of the court's action in refusing to permit the witness Bagley to give the reasons why he entered a plea of guilty to second degree manslaughter.

The basis of my conclusion is the rule set out in Lee v. State, 37 Ala.App. 321, 69 So. 2d 467, which rule was supported by citations of opinions of this court, and is to the effect that the exception to the rule of excluding testimony as to mental operations, which exception permits a witness to testify as to his motive in making discrediting statements brought out by an opponent's examination, should have no operation where a witness is discredited by showing his conviction for crime. This has been the view enunciated by this court, and by the Court of Appeals in many cases. See, Waters v. State, 117 Ala. 108, 22 So. 490; Fuller v. State, 147 Ala. 35, 41 So. 774; Ellis v. State, 244 Ala. 79, 11 So.2d 861; Kendrick v. Cunningham, 9 Ala.App. 398, 63 So. 797; Formby v. Williams, 17 Ala. App. 24, 81 So. 360; Nelson v. State, 35 Ala.App. 179, 44 So.2d 802.

A judgment or decree of a court which has jurisdiction of the subject matter and of the parties, and which possesses the power to render the particular judgment or decree should be, and is, immune from a collateral attack. Constantine v. Constantine, 261 Ala. 40, 72 So.2d 831.

The rule in Lee v. State, supra, is clear and certain in application. Exceptions sought to be engrafted onto a clear and workable rule are often overrefined and tend to lead to confusion in applying them

to slightly differing facts. Confusion thus replaces certainty, an element to be devoutly sought in law and cherished when obtained.

If justice demands a gloss of exceptions be grafted on a legal rule, then well and good. I cannot see, however, that departing from the rule enunciated in Lee v. State, supra, would with any degree of probability tend to favor or insure the rendition of justice to any greater extent than would adherence to the Lee rule.

To depart from the rule is but to invite confusion as surely as night follows day. For an example of such a development one need but to examine our cases dealing with the Rule of Exclusion prevailing in this state, and only in this state, and the chaos wrought by engrafting exceptions thereon. Many of these exceptions present distinctions without a difference, and render application of the rule impossible with any degree of certitude. A thorough analysis of this situation is presented in an article by Judge McElroy, in 1 Ala. Lawyer 221, and the dissenting opinion authored by then Chief Justice Livingston in McGuff v. State, 248 Ala. 259, 27 So.2d 241.

Nor do I agree that this is a type of situation in which discretion should be vested in the trial court. Such rule would again invite uncertainty as to what evidence is to be considered admissible in a situation as is here presented.

BLOODWORTH, Justice (dissenting):

As I understand it, the majority holds that the defendant has the right to rehabilitate witness Bagley by showing all the circumstances attending his plea of guilty. This would include showing that he "entered the plea of guilty of second degree manslaughter in reliance on the agreement between Bagley, his counsel, and the solicitor that if Bagley pleaded guilty to second degree manslaughter he would be put on probation." I most respectfully dissent from this holding.

**214**

I think the extent of the testimony to be admitted to rehabilitate a witness (who has been thus impeached) should be committed to the sound discretion of the trial court. See United States v. Boyer, 80 U.S.App. D.C. 202, 150 F.2d 595, 166 A.L.R. 209 (1945); Annotation 166 A.L.R. 211.

It should be noted that in the instant case, the trial court allowed questions of witness Bagley to the effect that he was indicted for first degree manslaughter, that he pleaded guilty to second degree manslaughter, that he got a sentence of one year, and that he was put on probation. Under these facts and circumstances, I do not think there was any abuse of the trial court's discretion in restricting the proof of the circumstances attending the plea to these matters and in refusing to allow the witness to "explain the circumstances under which he pleaded guilty and his motive for doing so."

I also suggest, in view of these facts, that this is a case for application of our Rule 45, Rules of the Supreme Court, 279 Ala. XXI, XLI.

I would therefore affirm the case and respectfully dissent from the decision insofar as it holds there was reversible error in refusing to allow defendant to show "why" witness Bagley pleaded guilty.

MADDOX, Justice (dissenting):

I agree with the majority as to the holding with regard to the first proposition, but respectfully disagree with the majority on the point that the trial court committed reversible error in refusing to permit Bag-

ley to testify about the "agreement" he had made with the District Attorney about pleading guilty to manslaughter in the second degree.

The general rule is well settled that mental status is not the subject of direct testimony, to which, of course, there is an exception, the exception being that when the witness has admitted on cross-examination certain statements which tend to discredit his testimony, he may on redirect state what induced him to make the statements, although the reason is but an uncommunicated motive. But the exception is inapplicable where the witness is discredited by showing that he has entered a plea of guilty to a crime. See Lee v. State, 37 Ala.App. 321, 69 So.2d 467, cert. den. 260 Ala. 698, 69 So.2d 470 (1953).[4]

Admittedly, the authorities are not in agreement as to whether a witness may explain his plea of guilty or his conviction of crime, but I think our Alabama cases hold such evidence to be inadmissible. See Annotation 166 A.L.R. 211. The better rule would probably be to allow the trial court wide discretion in determining whether to allow a witness to explain the reason why he entered a plea of guilty to an offense, but I frankly doubt if our cases are this liberal.

I do not think Sovereign Camp W. O. W. v. Gunn, cited by the majority, is applicable here. As I read that case, it merely holds that the record of conviction of the beneficiary for murder of the insured is admissible in the civil proceeding, and while not conclusive of the issue, is nevertheless prima facie evidence of guilt when offered

4. In *Lee*, supra, the defendant was on trial for transporting illegal liquor and one of the arresting officers testified that the defendant had his hand over a pistol on the seat of the automobile. On cross-examination by the solicitor the defendant claimed he did not know the pistol was in the car, and that it belonged to his wife, whereupon the solicitor asked him if he had not pleaded guilty to a charge of carrying a concealed weapon, involving the pistol, and the defendant

admitted that he had. On redirect, defendant's lawyer attempted to rehabilitate him by asking him " * * * if you didn't plead guilty just to get it settled?" The State objected and the objection was sustained. In *Lee*, supra, the trial court allowed the defendant to testify to the fact that he did not own the pistol and that he did not know it was in the car, but the Court refused to allow him to explain his motive for pleading guilty.

in the civil proceeding. We there held, and correctly, I think, that the beneficiary should be allowed to prove all facts tending to show her innocence. In the case now before us, the insurance company was allowed to show by extensive evidence that the insured was the aggressor and that its witness, Bagley, was really not guilty of the offense for which he entered a plea of guilty. In fact, had all this evidence not been presented on direct there would have been no occasion for the plaintiff on cross-examination to attempt to discredit the witness by showing that he had entered a plea of guilty to a charge of second degree manslaughter.

In any event, the trial court allowed the insurance company to show that the witness was indicted for a more serious offense of manslaughter in the first degree, that he entered a plea of guilty to manslaughter in the second degree and was sentenced to twelve months hard labor and put on probation. Therefore, I do not think the trial court committed reversible error and I would affirm the judgment.