This case, now on appeal for the second time, began with a request by John Head directed toward the Civil Service Board of the City of Gadsden asking the Board to reinstate him to his former position as a police lieutenant. Head had tendered a "letter of resignation" to the Chief of Police after being accused of pilfering goods from a store he was assigned to guard. After being tried for and acquitted of embezzlement, Head sought his reinstatement.
Head's request for reinstatement was the first step along a long and rather tortuous path. Following a meeting the Civil Service Board issued a decision refusing to entertain Head's petition on the grounds that it had no jurisdiction. Head filed an appeal to the circuit court alleging that he had been wrongfully forced to resign and demanding that he be reinstated and paid his accrued wages from the date of his allegedly wrongful discharge. The crux of Head's contention was that his purported resignation was the product of threats made by the Chief of Police which were tantamount to a forced resignation. Head argued that he was, in effect, deprived of his procedural rights under the civil service statute. See Act No. 671, Acts of Alabama 1951. The circuit court rejected Head's argument. It apparently took the position that since he had submitted a letter of resignation he had voluntarily left his position with the police department and that the city's summary judgment motion was *Page 1007 
due to be granted. Rule 56, ARCP. On appeal, the Court of Civil Appeals held that a genuine issue of material fact existed concerning the alleged forced resignation. Head v. GadsdenCivil Service Board, 389 So.2d 516 (Ala.Civ.App. 1980).
After remand to the circuit court the case was restored to the active trial docket. The city filed a counterclaim in which it lodged charges against Head accusing him of violating the civil service rules and demanding his termination. A jury trial was held on the issue of whether the alleged resignation was procured by duress such that it constituted an involuntary discharge rather than a volitional termination. The jury found in favor of Head and a judgment was rendered restoring him to his former position together with all back pay and benefits, whereupon an appeal was perfected by the city to this court.
The City's primary assertion of error concerned a motion inlimine granted by the trial court. The court granted Head's motion to restrict the testimony to evidence relevant to the circumstances surrounding the alleged resignation and to prevent the city from "going into the details of the criminal offense." The city made a timely objection and offer of proof. It argued that the standard of proof is different in a criminal proceeding than in a civil matter and that the details of the alleged misappropriations were relevant to the issues raised by the city's counterclaim.
Head argued that to allow the city to introduce evidence concerning the events surrounding the indictment would constitute a retrial of Head which would be "illegal and unconstitutional." Head cited no authority to support that position, but quoted several cases regarding the value of thein limine order in shielding the jury from prejudicial, immaterial testimony. The court ruled that the allegations of criminal activity were disposed of by the criminal trial and were res judicata.
An acquittal in a criminal case is not dispositive of the issues presented in a civil proceeding arising out of the same set of operative facts. Aetna Life Ins. Co. v. Dowdle, 287 Ala. 201, 250 So.2d 579, 587 (1971); Mobile Light R. Co. v. Burch,12 Ala. App. 421, 68 So. 509, 512 (1915). If the basis of the trial court's order was an assumption that the criminal trial resolved the questions of fact surrounding the alleged defalcation, we cannot agree. "By definition, an acquittal in a criminal case does not resolve all factual issues, but leaves factual issues doubtful. . . . [A] judgment of acquittal is only a determination that guilt has not been established beyond a reasonable doubt, although a preponderance of evidence might point thereto." Bredeson v. Croft, 295 Ala. 246, 326 So.2d 735,737 (1976) (citations omitted). For instance, if A filed suit against B seeking recovery of money which B allegedly took from A during a robbery, B's acquittal in a criminal proceeding for robbery would not constitute a bar to A's suit. Austin v.Clark, 247 Ala. 560, 25 So.2d 415, 416 (1946). A judgment in a criminal case cannot be res judicata in a civil action because the parties to the actions are different, the rules of evidence are different, and a different standard of proof is involved.Bredeson v. Croft, supra.
In addition to the grounds set out by the appellant, there is another reason why the judgment cannot stand. These proceedings are governed by statute. Act No. 671, Act of Alabama 1951. When special statutory authority in derogation of the common law is conferred on a court of general jurisdiction, the court becomes a court of limited jurisdiction and compliance with the statute is necessary for the court to acquire jurisdiction over the action. Birmingham Electric Co. v. Alabama Public ServiceCommission, 254 Ala. 119, 47 So.2d 449, 452 (1950).
The statute provides that an appeal to the circuit court may be taken from any decision of the civil service board and that the appeal shall be a trial de novo. Act. No. 671, § 13. In order for the circuit court to acquire jurisdiction, the issues must first be presented to the board and an appeal perfected according to the statutory provisions. Here, the case was never heard *Page 1008 
by the civil service board, although it did have jurisdiction. There being no decision of the board to appeal from, the circuit court acquired no jurisdiction over the case. An appellate court must ex mero motu take cognizance of a lack of subject matter jurisdiction. Bramlett v. Alabama State TenureCommission, 341 So.2d 727, 730 (Ala.Civ.App. 1977).
Because the circuit court lacked jurisdiction, its judgment is void. However, the judgment is still of record, and it should be expunged by the court. Therefore, the case is remanded to the circuit court for remand to the Board, after which the Board must hold a hearing to determine whether Head's resignation was improperly procured by the Chief of Police. The city's counterclaim constituted charges under Section 12 of the act seeking removal of Head for alleged conduct unbecoming to a police officer. The city should be given an opportunity to present evidence to the board relative to those charges. If the board finds in favor of Lt. Head on the question of forced resignation, it must then consider the charges brought by the city regarding the allegations of wrongdoing. After a final decision is rendered by the board, any of the parties so desiring may perfect an appeal to the circuit court as provided by section 13 of the civil service act governing the proceedings.
REVERSED AND REMANDED WITH DIRECTIONS.
TORBERT, C.J., and ALMON, EMBRY and ADAMS, JJ., concur.